[L. A. Nos. 950-951. In Bank.—December 3, 1902.]

F. L. GREEN et al., Respondents, v. SOUTHERN CALI-
FORNIA RAILWAY COMPANY, Appellant.

A. A. WARREN, and his wife, BETSEY WARREN, Re-
spondents, v. SOUTHERN CALIFORNIA RAILWAY
COMPANY, Appellant.

NEGLIGENCE—COLLISION OF WAGON WITH TRAIN AT CROSSING—CON-
TRIBUTORY NEGLIGENCE—QUESTION OF LAW.—In an action to recover
damages for injuries sustained from the collision of a wagon with
a railway train at a street-crossing, where the facts are settled and
it clearly appears that the injured party did not exercise ordinary
care, the question of contributory negligence is a question of law.

ID.—DUTY TO LOOK AND LISTEN.—The railroad track of a steam railway
itself must be regarded as a sign of danger, and one intending to
cross must avail himself of every opportunity to look and to listen
for approaching trains.

ID.—DUTY TO STOP.—As a general rule, one approaching a railroad
track must stop and listen, and the only exception to such rule is
that there may be particular instances where the circumstances
would not call for such precaution.

ID.—CASE IN JUDGMENT—RECOVERY PRECLUDED—NONSUIT.—Under the
facts here shown, the plaintiffs were guilty of contributory neg-
ligence as matter of law in allowing their horse and wagon to
cross the railroad track, without using diligence to look both ways
and listen for the approaching train, or to stop and listen therefor,
and such contributory negligence precluded a recovery, notwithstand-

CXXXVIII. Cal.—1

ing the concurring negligence of the railroad company, and entitled
the defendant to a nonsuit. [Per McFarland, J., Henshaw, J., and
Temple, J. Beatty, C. J., dissenting.]

Id.—Question of Fact—Error in Instructions.—Under the circum-
stances of this case, the question of contributory negligence was
one of fact for the jury; and the reversal should be ordered on the
ground of error in the instructions given to the jury as to the effect
of the negligence of the defendant upon the question of the con-
tributory negligence of the plaintiff. [Per Beatty, C. J.]

APPEAL from a judgment of the Superior Court of San
Bernardino County and from an order denying a new trial.
John L. Campbell, Judge.

The facts are stated in the opinion of the court.

C. N. Sterry, Henry J. Stevens, and Foshay Walker, *amicus
curiæ,* for Appellant.

J. P. Hight and L. M. Sprecher, for Respondents.

McFARLAND, J.—Under the view which we take of these
two cases, they may be considered and determined in one
opinion.

Betsey Warren and her daughter, Mrs. Green, both women of
mature age, and in possession of all their natural senses and fac-
ulties, and of good intelligence, were traveling in a small market-
wagon drawn by one horse, and when crossing the railroad
track of defendant at C Street, in the city of San Bernardino,
a collision occurred with a moving train of defendant, by
which Mrs. Warren was injured and Mrs. Green killed. No.
951 is an action by Mrs. Warren and her husband to recover
damages for the injury to the former; and No. 950 is an action
brought by relatives of Mrs. Green, deceased, to recover dam-
ages for her death. In each case there was a verdict and judg-
ment for plaintiffs; and in each case defendant appeals from
the judgment and from an order denying its motion for a new
trial. In each case defendant moved for a nonsuit upon the
ground, among others, that Mrs. Green and Mrs. Warren at
the time of the collision were guilty of contributory negligence,
which precludes any recovery. We think that upon this
ground the motion for a nonsuit should have been granted in
each case, and that the verdict subsequently returned was not

warranted by the evidence, and that therefore the order deny-
ing the motion for a new trial should be reversed.

It has long been established by the decisions of this court—
as well as of other courts—that in cases like these at bar, where
the facts are settled, and it clearly appears that the injured
party did not exercise ordinary care, the question of contribu-
tory negligence is a question of law. In *Fernandes* v. *Sacra-
mento City Ry. Co.*, 52 Cal. 45, the court say: "In an action
to recover damages for an injury to the person, sustained by
the negligence of the defendant, the question of contributory
negligence is to be decided by the court as a question of law
when the facts are clearly settled, and the course which com-
mon prudence dictates can be readily discerned." In *Flem-
ming* v. *Western Pacific R. R. Co.*, 49 Cal. 253, the court say:
"The motion for a nonsuit should have been granted. When
the facts are admitted or established by uncontradicted evi-
dence the question of negligence is a matter of law for the
court," citing cases. In *Glascock* v. *Central Pacific R. R. Co.*,
73 Cal. 137, the court, after reciting that the question of negli-
gence is generally for the jury, say: "Yet when it appears
from the undisputed facts—shown by the plaintiff's own evi-
dence—that the deceased has not exercised such care as men of
prudence usually exercise in positions of like exposure and
danger, the question is one of law for the court," citing former
cases. In *Pepper* v. *Southern Pacific Co.*, 105 Cal. 389, the
court said: "It is well settled in this state and elsewhere,
that if his negligence contributed proximately to the acci-
dent resulting in his death, the plaintiff cannot recover,
even though the defendant negligently omitted," etc. In
*Herbert* v. *Southern Pacific Co.*, 121 Cal. 227, the court
said: "But the cases arising from injuries suffered at
railroad crossings have been so numerous, and upon certain
points there has been such absolute accord, that what will
constitute ordinary care in such a case had been precisely
defined, and, if any element is wanting, the courts will hold
as matter of law that the plaintiff has been guilty of negli-
gence. And when injury results which might have been
avoided by the use of proper care, the plaintiff cannot re-
cover, although the defendant has also been guilty of negli-
gence. In this special case the amount of care, as well as
the nature of it, has been settled. The railroad track of a

steam railway itself must be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for approaching trains.'' The doctrine firmly settled by the above cases and others to the same effect is the law of this state. And we think the undisputed facts in the case at bar clearly bring it within the principle above stated, and show that, as a matter of law, the parties in control of the wagon at the time of the collision were guilty of negligence which directly contributed to the injuries complained of, and that therefore there can be no recovery.

The following facts clearly appear: Mrs. Warren and her daughter, Mrs. Green, lived in the country, a few miles from the city of San Bernardino. They both lived at the same place, although in separate houses. On the occasion of the accident they went to the city on the same common business,—to wit, to take their produce to market and buy groceries. The wagon used by them was drawn by a horse belonging to Mrs. Warren's husband, and the wagon to either her husband or son-in-law. The horse was well known to both of them. It was known by both of them to be somewhat fearful of a moving railroad train when quite near it, but was not hard to stop or control. Returning home from the city they traveled northerly on C Street. The railroad track of appellant—an ordinary railroad running through the country, on which cars are propelled by steam in the usual manner—runs east and west, and crosses C Street near foundry buildings, which are on a piece of land inclosed by a picket-fence. The point of collision is within the territorial limits of the city, but not in a thickly settled part of it. The women approached the railroad track at a time when a train was due from the east, which fact was known to Mrs. Green, who was driving, and must have been known to Mrs. Warren from a remark made by Mrs. Green hereinafter noted. For quite a long distance from the crossing the railroad to the east of C Street could not be seen from that street, on account of natural and artificial obstructions to the vision, except at a point from 110 to 138 feet from the crossing, where, through a gate, or opening, a part of the railroad lying some distance from the crossing could be seen, but no part of it could be seen within 333 feet of the crossing. As they passed by this opening they looked through it, and, not seeing any train, Mrs. Green re-

marked: "I think the train is gone." From that point no part of the railroad track to the east could be seen until a point about thirty-three feet from the crossing was reached, where, by looking over a picket-fence which stands there, or through the pickets, the track can be seen for about 333 feet. When the line of the right of way of the appellant, which is twenty-five feet from the center of the track, is reached, there is an unobstructed view of the track to the east for nearly 1,000 feet—to a point where the track curves. The women did not look over or through the picket-fence; they did not look to the east when they came to the line of the right of way; they did not stop to listen; they drove right along without looking to the east or stopping to listen, until the horse was within a few feet of the track; and then, seeing the train nearly upon them, the horse was whipped and made to cross immediately in front of the locomotive, which struck the wagon and caused the damage. The horse was trotting along C Street; but Mrs. Warren testified that it had slowed to a walk before they had reached the right of way; and that must be taken to be the fact for the purpose of this case, although she said it was a "fast walker." However, after they had looked through the gate, or opening, as above stated, and had come into the part of the street where the view of the track to the east was obstructed, they drove, either at a trot or at a fast walk, up to within a few feet of the track without looking or stopping to listen. This was extreme carelessness and recklessness. If they had stopped to listen, or after passing the foundry had looked either over or through the picket-fence, or had looked when they came to the line of the right of way, they would have seen the approaching train, and could have avoided any danger. They could have escaped by stopping, instead of whipping the horse in front of the locomotive; but carelessness had been committed before reaching that point. Their conduct was simply that of one who without any care whatever recklessly goes in front of a rapidly and nearly approaching train; and if that conduct does not constitute contributory negligence, then a railroad company must be held liable for damages in all cases of collision, without any reference to the conduct of the parties injured. The fact that they looked to the east as they passed the gate, or opening, farther up the street, as above noted, which was of little benefit to them, is

no excuse for not looking or listening at points near the track, where such looking or listening would have been effective.

There is in the briefs of appellant considerable discussion as to the duty of one approaching a railroad to stop and listen before attempting to cross. The general rule undoubtedly is, that he must so stop, because in most cases ordinary prudence requires that he should do so; and the only exception to the rule is, that there may be particular instances where the circumstances would not call for such precaution. The question is fully discussed, and many authorities cited and commented on in *Blackburn* v. *Southern Pacific Co.*, 34 Or. 215, which is very similar to the case at bar. The court there quotes approvingly from Elliott on Railroads as follows: "As we have said, we do not think that it can justly be affirmed as a matter of law that there is a duty to stop in all cases; but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such that but one conclusion can be reasonably drawn, and that conclusion is, that it is negligence to proceed without halting, the court should without hesitation direct a verdict if no halt is made." And the court held (we quote from the *syllabus*, which is a correct statement of the opinion) as follows: "The failure of a person about to cross a railroad track, on a highway at grade, to look and listen for an approaching train, or to stop for such purpose, *where the view of the track is obstructed,* or where there is noise which he may control, and which may prevent his hearing such train, is negligence *per se,* which will bar recovery for an injury resulting from a collision with the train at such crossing." And the court further held—which is an answer to the contention of respondent in the case at bar as to the alleged negligence of the defendant—as follows: "There can be no recovery for the death of one who was struck by a railroad train at a grade-crossing where the evidence showed that, *though such train was moving at a rate of speed prohibited by law,* the approximate cause of the accident was the negligence of the deceased in approaching such crossing without exercising due caution." The same rule has been declared by this court. (See California cases hereinabove cited, and *Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 161.) The contention of respondents that they should be allowed to recover notwithstanding the negli-

gence of the parties controlling the wagon, as above stated, because the appellant was also guilty of negligence by failing to give proper signals and allowing the train to move at an unusually great rate of speed, is not maintainable under the decision in *Holmes* v. *South Pacific Coast Ry. Co.,* 97 Cal. 161. In the case at bar there was conflicting evidence as to the rate of speed and the alleged failure to give the usual signals; but, assuming that the jury had the right to find on these points in favor of respondents, the principle contended for does not apply. In the Holmes case the court, having considered instances in which the said principle might be invoked, says: "But this principle cannot govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them." The court further says: "This, we think, may be regarded as a correct statement of the law upon this point, and as furnishing a clear and definite rule by which to determine in any case whether or not the negligence of the person injured may be said, in a legal sense, to have contributed to such injury; and when we apply this rule to the case at bar it is at once seen that, even if it should be conceded that there was negligence upon the part of the defendant in its management of the train at the time of and just preceding the accident, still the plaintiff would not be entitled to recover, as such accident could not have occurred without the concurrent and active negligence of the deceased at the time."

Upon the facts in the case at bar, we think it quite clear that Mrs. Warren was responsible for the negligence as well as Mrs. Green; under the circumstances it was their joint duty to be careful, and there is no pretense that she objected to anything done by Mrs. Green.

For the reasons above given the cases must both be reversed.

In each of the above entitled cases the judgment and order denying a new trial appealed from are reversed.

Henshaw, J., and Temple, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment of reversal; but I think it can scarcely be held that the superior court erred in overruling the motion for a nonsuit. At the close of plaintiffs' evidence in chief,—viewing it in the favor-

able light in which it must be regarded for the purposes of this motion,—the case presented was in substance as follows: Mrs. Green and Mrs. Warren were familiar with the locality, and knew as they approached the crossing that a train from the east was about due at that point. They knew also the disposition of the horse they were driving, and that they could not safely stop near the track for the train to pass. In passing the gate 110 feet from the center of the railway, they had a view of that portion of the track between a point 350 feet east of the crossing and a point 990 feet east of the crossing. They availed themselves of this opportunity to look, and saw that no train was on that portion of the track in view, and the conclusion necessarily followed that the expected train had either passed out of view to the west or that it was on that portion of the track extending 350 feet east of the crossing, or that it was fully 1,000 feet distant. In the first case, no danger was to be apprehended; in the second, the train, moving no faster than ten miles an hour, must come into full view and cover the crossing before they, moving at the rate of three and a half miles an hour,—a "fast walk,"—could possibly reach the right of way. In the third case alone would there be any danger, and then only upon the supposition that the train would be moving within the limits of San Bernardino at the rate of thirty-five miles an hour, and without giving any of the usual and statutory signals of its approach. I feel unable to agree that under these circumstances the failure of those ladies to stop and listen at some point within the eighty-five feet between the gate and the south line of the foundry would have been negligence *per se*.

But the case made by the plaintiffs' evidence was very materially changed by the evidence introduced by defendant, and especially as to the speed at which the train was moving, a question of vital importance to the case for the plaintiffs, which depends upon the assumption that the train was moving at a rate of at least thirty-five miles an hour. One witness for the plaintiffs, Joseph Kelly, testified that he was driving toward San Bernardino parallel to the railway where it extends north and south beyond the elbow at which it turns to the west. He had long been accustomed to estimate the speed of horses. He thought he was traveling as fast as ten miles an hour, and was certain that he was not moving as slow as

seven miles. His estimate was, that the train, which passed him before reaching the curve, was moving three or four times as fast as he was, and that its speed was thirty-five or forty miles an hour. This was the only evidence offered by the plaintiffs directly to the point of the speed of the train, and it was corroborated only by the inference to be drawn from the evidence of Mrs. Warren, that the train was not in sight when she passed the gate, and by the violence of the subsequent collision. Against this the defendant's witnesses testified that the train was moving between the curve and the crossing at about the rate of twelve miles an hour. This was sufficient to make a conflict of evidence upon the point, but the defendant went further. The plaintiffs' witness Kelly had by his testimony fixed the point at which the train passed him and the point at which he had arrived when the alarm-whistle sounded just before the collision. This distance was surveyed and found to be 1,002 feet, while the distance covered by the train between the initial point and the crossing during the same time was only 2,150 feet, which, upon the basis of Mr. Kelly's estimate of his own rate of progress, would prove that the average speed of the train before reaching the crossing was barely twenty miles an hour; and if that was the average speed for the whole of that distance of 2,150 feet, that for the last 1,000 feet must have been considerably less than twenty miles; for in addition to the opinion of plaintiffs' witness that at the point where the train passed him, about 1,000 feet beyond the curve, it was moving more than thirty miles an hour, it was shown by defendant's witnesses that after passing the curve steam was shut off, and the train was moving partly by its momentum and partly by gravity on a slightly descending grade. All the evidence upon this point tends to the conclusion that the train between the curve and the crossing was moving at a speed of less than twenty miles an hour; and the most convincing part of this evidence consists of a survey of distances, which, if false or inaccurate, could easily have been proved false, but which was wholly uncontradicted.

If this is so, one of two conclusions necessarily follows: Either that the train must have been on or past the curve when these ladies came to the gate, and that in driving by without stopping they failed to see it, or that between the gate and the track they must have driven at a pace so slow that a train

moving at a very moderate speed—less than twenty miles an hour—could cover the distance from a point beyond their view at the gate to the crossing before they could reach the point of collision.

The first of these suppositions is by no means improbable; for besides the fact that from a point opposite the north side of the gate-opening a portion of the track at the elbow (where the train might have been) is not visible, it is also true that at a point still nearer on the curve the train was headed directly toward the gate, no part of it being visible from that point except the locomotive, and that apparently motionless. But this is a theory of the accident which, however probable it may seem, would not perhaps justify this court in holding that the verdict of the jury is not sustained by the evidence, and my only object in entering into this discussion of the facts is to show that the case was such as to entitle the defendant to have the question of contributory negligence submitted to the jury upon a correct statement of the law governing its liability.

The superior court gave to the jury, among others, the following instructions:—

"No. 11. Where, by defendant's negligence, the party injured is put in a place of danger, and in attempting to extricate himself from it he does not take the best hazard, he will not be chargeable with contributory negligence if the hazard he does take is such as a man of ordinary prudence might have taken under the same circumstances.

"No. 12. I further charge you that it is an established rule of law that one person will not be allowed to impute a want of vigilance to another injured by his act, if that very want of vigilance were the consequence of an omission of duty on his part; that if the defendant by his own act throws the injured person off his guard, the latter's lack of vigilance cannot be regarded as negligence, and one is not chargeable with contributory negligence in failing to anticipate the negligence of another, and in not providing against it. Every one has the right to presume that others will act in a lawful and proper manner; consequently the law will not hold it imprudent in the injured person to have acted upon a presumption that the defendant has done or will do its duty."

These instructions, and especially the latter, were attacked

by appellant in its specifications of error, and in the briefs filed in support of its appeal numerous authorities, including our own decisions, were cited in support of the contention that they were erroneous. The point, however, was passed over without special notice in the department opinion, and for that reason chiefly I concurred in the order for a rehearing.

The effect of the decision, as I viewed it, was to overrule without noticing at least one recent decision of this court in which a rehearing was asked and denied (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 232), where the same point was involved, and where the grounds of decision were thus plainly expressed:—

"The only answer to this is, that defendant's employees did not ring the bell or sound the whistle, and that the fireman was not at his place on the left side of the engine. The argument, of course, is, that if the signals had been given plaintiff might have heard, and, not hearing them, he had the right to assume when about to make the crossing that the train had not then reached the whistling-post 1,320 feet above, and that the fireman might have seen him in time to have prevented the accident had he been upon the lookout. It may be admitted that all this was culpable negligence on the part of defendant's employees. The defense of contributory negligence implies that defendant may have been guilty of such negligence as would justify a recovery by the plaintiff if he were not also in fault. This is no argument, therefore, against the position of the defendant."

If this is the law, then the instructions above quoted were plainly erroneous and prejudicial. If the law is otherwise, it ought to be plainly so declared. Until it is so declared we are bound by it, and upon that ground I concur in the judgment.