[Civ. No. 616.   Second Appellate, District.—April 14, 1909.]

AVIS HEITMAN, Respondent, v. THE PACIFIC ELEC- TRIC RAILWAY COMPANY, a Corporation, Appel- lant.

NEGLIGENCE—ACTION FOR DEATH—COLLISION OF WAGON WITH ELECTRIC CAR—SUPPORT OF VERDICT AS TO NEGLIGENCE.—In an action for death alleged to have been caused by the negligence of the defend- ant in causing its electric car to collide with the wagon of the deceased, it is held that the evidence is sufficient to sustain the verdict in regard to the negligence of the defendant in causing the car to approach the crossing at an unusual speed, and in failing to give any alarm of such approach.

ID.—CONTRIBUTORY NEGLIGENCE—NEGLIGENCE OF DRIVER ATTRIBUTABLE TO DECEASED.—In determining whether the deceased was guilty of contributory negligence, as matter of law, the negligence of the driver of the mules attached to the wagon of the deceased, in which he was sitting when killed, must be regarded as the negli- gence of the deceased.

ID.—FACTS SHOWING CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW— SIGHT PREVENTED—FAILURE TO STOP AND LISTEN FOR RUMBLE OF CAR.—When it appears from the undisputed facts that the driver was familiar with the crossing, and knew that the approach of the electric car could not be seen on account of both roads going through a cut thereat, and it is proved that the rumble of the approaching car could have been distinctly heard if the driver had stopped to listen therefor before going on the track, and could thereby have avoided the accident, and such rumbling was obscured by the rumble of the wagon, it was upon such facts contributory negligence, as matter of law, for the driver not to stop the wagon and listen for the rumble of the approaching train before attempt- ing to cross the track at the cut; and the verdict against contribu- tory negligence is unsupported in law.

ID.—BASIS FOR CONTRIBUTORY NEGLIGENCE.—The basis for the rule of contributory negligence is that the party to whom it is imputed must bear the harm which he brings upon himself, and which he might have avoided by reasonable care for his own self-preservation.

ID.—TEST OF CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.—The test whether the court is authorized to determine the question of contributory negligence, as matter of law, is whether the facts are such that there is no room for a sensible or impartial man to draw more than one reasonable inference as to the negligence of the driver and of the deceased.

ID.—FAILURE DELIBERATELY TO BRING ABOUT A COLLISION NOT A TEST—RESPONSIBILITY FOR MISCALCULATION OF "CHANCES" OR FORGETFULNESS.—It is not a test for determining contributory negligence that the deceased, or his driver, had not deliberately brought about a collision. The deceased is equally responsible for the harm which he brings upon himself when he "takes the chances" and makes a miscalculation in relation thereto, or fails to think of some ordinarily prudent precaution, which a proper regard for his own safety, as well as that of the passengers in the car which collided with his wagon, demands.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Gibson, Trask, Dunn & Crutcher, for Appellant.

Geo. A. Skinner, and John W. Kemp, for Respondent.

TAGGART, J.—An action to recover damages for death by negligence. General verdict and judgment in favor of plaintiff for the sum of $4,000, and defendant appeals from the judgment and an order of the superior court denying its motion for a new trial.

Plaintiff sues as the widow of Theodore J. Heitman, who was fatally injured on April 1, 1906, while riding on a wagon drawn by mules on and along a road or street in the city of Long Beach, known as Anaheim road; the driver of the team being one W. E. Caseboom, who was associated with Heitman in the transfer business. Anaheim road ran east and west and was intersected and crossed by the car tracks of the

electric railway line of the defendant, which ran over and along a private right of way extending north and south, from said Anaheim road and crossed it at right angles. When the team, which was traveling westerly, reached the crossing of the railway track, one of the defendant's cars propelled by electricity approaching from the south struck the mules, carrying them with the wagon and occupants some sixty or seventy feet into a cut through which the railway ran at this point, throwing Heitman from the wagon and so injuring him that he died shortly thereafter.

The negligence alleged by the complaint consisted of the car approaching the crossing at an unreasonable and reckless speed and the failure to give any alarm of such approach; a second count charges the negligence to have been wanton. The answer denies negligence and alleges contributory negligence on the part of the deceased.

In respect to the finding of the jury on the negligence of defendant, appellant concedes that the evidence in the case is such that, if this court considers the sufficiency of the evidence to sustain the jury's conclusion, in the light of the rule that the most favorable inferences that the jury could reasonably draw from the evidence must be indulged in, its appeal in this respect is ineffective (*King* v. *Green*, 7 Cal. App. 473, [94 Pac. 777] ), but urges that the verdict is not supported by the evidence on the issue of contributory negligence.

The rule of the Roman law from which the doctrine of contributory negligence was derived is short and explicit: ''The harm I bring upon myself, I must bear myself.'' In determining whether or not the deceased in the case at bar brought upon himself the harm which resulted in his death, it is conceded that the negligence of the driver of the mules is to be imputed to and regarded as the act of the deceased. The same rule conceded by appellant to be applicable to a consideration of its negligence when the sufficiency of the evidence is being reviewed must be applied to the negligence of the deceased. It is primarily for the jury to determine whether the conduct of the deceased and the driver in approaching the crossing was that of ordinarily prudent persons under such circumstances, and we are concluded by this finding, unless the contrary necessarily appears from the undis-

puted facts. (*Schneider* v. *Market St. Ry. Co.*, 134 Cal. 488, [66 Pac. 734].)

The facts as to the approach of the railway track by the deceased, as testified to by the driver Caseboom, who was a witness for plaintiff, are as follows: "As we were about to approach the tracks the mules were going in a little jog trot and as they went over the tracks they started into a walk, and we saw the car and pulled back on the mules, and we couldn't do anything but let the car strike us. I saw the motorman. He was looking right in my face. He was handling them jiggers there about as fast as he could when I seen him. As we were about to approach the track Heitman says, 'Do you hear any car?' and I listened and says, 'No.' I listened for the car before I came out into the place of danger. If any bell or gong was rung I didn't hear it. I was listening for it. The wind was blowing." On cross-examination this witness said he did not stop the team to listen, but that they kept right along in a slow trot until they voluntarily slowed into a walk when they stepped on the rails. In this slow trot there was considerable noise with the wagon. "If I had stopped still there wouldn't have been any noise from the wagon to prevent my hearing the noise of the car. I couldn't see over the bank sitting on the seat. I didn't look until I got around the corner, and then it was too late. The motorman was apparently doing everything he could."

Evidence was introduced by plaintiff to show that some of this testimony was a surprise to her, and, as showing that the witness had made other statements in conflict with his testimony, her attorney testified that the witness Caseboom had told him that the motorman was looking away from the crossing when the witness first saw him, and that he had stated that he was walking his team; as he approached the crossing he slowed down the team the better to hear the car if it was coming. Two other witnesses who testified to hearing no bell stated there was no wind. One of these testified to having met the team about twenty to twenty-five feet from the railway track, and that when he had proceeded about ten feet farther he heard the noise of the collision and looked around, and that when he passed the team the mules were walking. This witness, who was a pedestrian, testified to hearing the noise of the rumble of the car, although he did not

hear any gong or bell ring, and said he could have heard it if one had been rung.

It appears from the testimony of other witnesses for plaintiff that the horses would have to be on the track before the driver could see a car approaching from the direction in which the car came, on account of both roads going through a cut at the place of intersection, making a bank about eight feet high. We do not think it can be said that the deceased must necessarily have stood upon the seat and looked for the car or have had negligence imputed to him.

Where the question of liability turns upon a finding of fact as to who was guilty of the last act of negligence previous to the injury, without which the accident would not have happened, the necessity of discriminating between different sets of facts presents a matter primarily within the province of the jury; but no question of this kind is here presented. When the driver and the motorman discovered each other, it was too late for the former to withdraw from the track or drive across, and impossible for the motorman to stop the car in time to avoid a collision. The negligence of the motorman being assumed, that of the driver remains to be determined. The latter was familiar with the crossing and knew that he was approaching a place of danger, and that he could not see the car coming on the private right of way until his mules would reach the first rail of the track, when it would be too late to prevent them being struck by the car if it were coming at the rate which he knew it generally approached the crossing, or even if it had been running at a more moderate rate of speed. The team was either walking or going in a slow trot, and the wagon was making considerable noise. He listened for the car, but did not hear it, but did not stop to listen, although he admitted that if he had stopped he might have heard the noise of the car when there was no noise of the wagon to prevent it. This is further corroborated by the witness King, who was walking and listened from approximately the same position as the deceased occupied. He testified that while no gong was sounded, yet he could hear the rumble of the car. The witness Caseboom gave as a reason for not stopping to listen: "If I had stopped to think I would have known that the wind and the rumble of the wagon [other witnesses said there was no wind] together would have dead-

10 Cal. App.—26

ened the sound of the approaching car, but I didn't think of that.''

This was not a case where the party acting was called upon to exercise his judgment in a state of mental agitation caused by the presence of danger, but the application of the mind to the determination of what precautions were necessary in approaching a place of danger while occupying a position in which deliberation was invited by the surroundings. We are of opinion that there was no room for a sensible or impartial man to draw more than one reasonable inference as to the negligence of the driver and the deceased. This is the test of whether or not the court may declare, as a matter of law, that negligence does or does not exist. Without assuming to hold that in all cases and under all conditions the crossing of an interurban electric railway is to be governed by the same rules as those applied to steam railways, we, nevertheless, feel that the rule of precaution laid down in *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227, 230, [53 Pac. 651], is applicable here, and the deceased and his driver failed to observe the requirement to avail themselves of their full opportunity to listen for the car which they knew might cross the road from behind the obstruction which prevented them from seeing its approach. In this the case is to be distinguished from *Bilton* v. *Southern Pac. Co.*, 148 Cal. 443, [83 Pac. 440], and like cases.

The rule contended for by the respondent would preclude the court from finding as a matter of law that a person injured in crossing in front of a car had been guilty of contributory negligence in all cases in which such person had not deliberately brought about a collision. This is too narrow an application of the rule that a party must bear the harm which he brings upon himself. He is equally responsible where he ''takes a chance'' and makes a miscalculation. (*Schwanewede* v. *Hudson Co.*, 67 N. J. L. 449, [51 Atl. 696]), and where, as in the case at bar, he fails to think of some ordinarily prudent precaution which proper regard for his own safety, as well as that of those in the car whose lives he imperils by coming in contact with it, demands.

This view renders it unnecessary to mention the other errors assigned, but we have considered the testimony of Caseboom in the light of the inconsistencies due to the claimed surprise

of the plaintiff, and have given full weight to the testimony of the impeaching witnesses and to the contradictory evidence of the other witnesses so far as applicable under section 2049, Code of Civil Procedure. That is, without passing upon the errors assigned in the ruling and instruction of the trial court in respect to this matter, we have accepted both as correct for the purpose of determining the question of contributory negligence. For the same reason, we have also predicated our opinion upon the finding of the jury rather than upon the ruling of the court on defendant's motion for a nonsuit.

Judgment and order reversed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 12, 1909.