[Civ. No. 1570.    Third Appellate District.—September 28, 1916.]

## J. H. THOMPSON, Respondent, v. SOUTHERN PACIFIC COMPANY et al., Defendants; SOUTHERN PACIFIC COMPANY, Appellant.

NEGLIGENCE—COLLISION AT RAILROAD CROSSING—OBSTRUCTIONS—FAILURE TO STOP AND LISTEN—CONTRIBUTORY NEGLIGENCE.—In an action for damages for personal injuries received from a collision between an automobile driven by the plaintiff and a freight train of the defendant at a grade crossing on a public highway, the plaintiff is guilty of such contributory negligence as to preclude recovery, where it is shown by his own testimony that the view of approaching trains at the place of the accident was obstructed by a dense growth of sunflowers and weeds, which was well known to the plaintiff, and that he did not, upon approaching the crossing and while within the lines of the right of way of the railroad company, stop his machine, or look or listen for an approaching train.

ID.—OBSTRUCTED VIEW AT CROSSINGS—DUTY OF TRAVELERS.—While it is true that the rule requiring the traveler to *stop* at railroad crossings and look and listen for approaching trains is not an absolute one, yet if the view is obstructed he must place himself in a position where he can use his faculties of observation to advantage.

ID.—LACK OF NEGLIGENCE OF TRAIN OPERATIVES—RIGHT TO ASSUME—ERRONEOUS INSTRUCTION.—An instruction advising the jury that the plaintiff had the right .to assume that the defendant's employees would observe the law requiring them to ring the bell and sound the whistle when approaching the crossing is erroneous.

ID.—ACTION AGAINST RAILROAD COMPANY AND TRAIN OPERATIVES—JUDGMENT EXONERATING AGENTS—ACQUITTAL OF COMPANY.—In such an action, where recovery is sought against the railroad company and its servants, based upon the acts of the latter in running the train at a high rate of speed without sounding any warning of its approach, an acquittal of the latter of negligence is an acquittal of the company.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Power & McFadzean, for Appellant.

Alfred Daggett, Lamberson, Burke & Lamberson, and J. A. Chase, for Respondent.

BURNETT, J.—It is conceded by respondent that appellant has made a fair statement of the facts and we may, therefore, substantially adopt the same. The action is for personal injuries to plaintiff, resulting from a collision between an automobile driven by him and a freight train of appellant. The collision occurred July 18, 1912, about 4 o'clock P. M., at a grade crossing of a public highway. The crossing is located about one mile south of Dinuba, in the county of Tulare, and the train was, at the time of the accident, in charge of defendant Keith, as engineer, and defendant Rhone, as conductor. Defendant Waller was the fireman. Appellant and its trainmen were jointly charged with negligence.

The amended complaint in substance alleges that bordering the public highway on which the accident occurred on the south, and adjoining the railroad right of way on the west, there was at the time of the accident, and for a long time prior thereto had been, an orchard belonging to one Weddle; that the defendants had negligently permitted to grow up and mature on said right of way where the same crosses the public highway a dense growth of sunflowers and weeds; that the vegetation had grown to such height that a person traveling in a vehicle in an easterly direction along the highway across the railroad right of way could not see the railroad track or a locomotive engine or a train of cars upon it for any distance when looking in a southeasterly direction, until he reached a point near and almost immediately upon the railroad track; that the train of cars which collided with plaintiff's automobile was traveling upon its track from the southeast to the northwest; that at the time of the accident, the plaintiff, who was traveling along said highway in an easterly direction, brought his machine down to a slow gait at a point about one hundred and twenty yards west of the crossing, moved slowly toward the crossing, and looked for an approaching train; that because of the presence of the fruit trees in the Weddle orchard, and the sunflowers and weeds on appellant's right of way, he did not see any engine or cars on the track until he was practically upon the track; that before he got near the track he listened, but could not hear any train approaching the crossing; that when he reached the crossing, defendant and appellant, which was operating the train by and through its codefendants,

Keith, Waller, and Rhone, at a high rate of speed and in a careless, reckless, and negligent manner, ran into said automobile and seriously injured plaintiff.

It is alleged that the defendants Keith, Waller, and Rhone did not have control over the train; that they omitted to ring any bell, sound any whistle, or give any warning whatever as the train approached the crossing; that if defendants had sounded the whistle at a distance of eighty rods from the crossing, and had continued to ring the bell or sound the whistle from that point until they reached the crossing, the plaintiff would have known of the approach of the train, and would not have gone upon the track and been injured.

The answer denied all the allegations of the complaint except those in reference to the corporate capacity of appellant and the existence of said orchard, and affirmatively alleged that the train was carefully and properly run; that plaintiff was driving his automobile at a speed of about thirty miles per hour; that the whistle was blown and the bell sounded; that plaintiff, as he approached the crossing, did not look or listen for an approaching train; that if he had done so, he would have known that the train was approaching the crossing, and that he was guilty of contributory negligence which directly and proximately caused the injuries. The jury rendered a verdict in favor of plaintiff against the Southern Pacific Company for $17,946.55, but against plaintiff as to said trainmen, Keith, Waller, and Rhone.

It appears that plaintiff, in company with one West Lee, left Dinuba about 4 o'clock in the afternoon of the day of the accident. In leaving the town they crossed the railroad approximately one-half or three-fourths of a mile northwest of the crossing where the accident happened, and proceeded in a southerly direction until they came to a county road leading in an easterly direction toward the railway. They traveled along this roadway and in an easterly direction until the automobile collided with the train. As they crossed the railway in leaving the town of Dinuba the witness Lee looked down along the railroad track in a southeasterly direction toward the town of Monson and saw the smoke of a train beyond the crossing at which the accident occurred. Lee and the plaintiff say that there was a rough place in the county road upon which they were traveling, about one hun-

dred and fifty yards west of the crossing, near a stone culvert, and that plaintiff brought his automobile down to a slow gait and thereafter moved slowly toward the railroad crossing. They and their witnesses testified that there was one row of tall sunflowers extending along the south side of the county road and into the railroad right of way, to within a few feet of the railroad track, and that there was another row of tall sunflowers extending southeasterly from the south side of the county road along the fence which separates the railroad right of way from the Weddle orchard. Lee's estimate of the height of these sunflowers was six or seven feet.

The westerly or southwesterly boundary of the railroad right of way from the center line of the railroad track, measured along the center line of the highway, is about seventy feet. Plaintiff testified that as he approached the crossing he looked in a southeasterly direction, and that he listened for the purpose of ascertaining whether or not there was a train approaching the crossing, but that he did not see or hear one.

As to his knowledge of conditions at the crossing, he testified as follows: "I knew that trains were passing up and down the road frequently and I was somewhat familiar with the road. I do not know how often I have been over that road, but I believe I had been over it once that day, and I had had occasion to be over it many times previous to that time, but I went usually another way and didn't go over this crossing. I noticed the sunflowers, or other weeds or wild oats there about ten days before the accident. At that time I particularly noticed the sunflowers and wild oats, and this other vegetation, and that is the reason I approached as cautiously as I could, and I knew they were there on the occasion of making this approach to the railroad track on the eighteenth day of July."

As to his automobile, he testified: "My automobile was in good condition and repair, both as to brakes and otherwise, and I could stop it within a distance of three or four feet by applying the brakes. I could have stopped it by the emergency brake, or the foot brake, or by shifting my gearing across to the other side of the disc. I could have set it back so that it would not have moved a foot after that."

As to his conduct while within the railroad's right of way, he was asked this question: "Now, when you were approaching the crossing, and while you were within the lines of the

right of way of the railroad company—still on the county road, of course—did you stop your machine, or look or listen for an approaching train?" And he answered: "I did not. I could not have seen it if I did, unless I got out of the machine and walked up to the track." By this answer he showed very clearly, under the decisions, that he was chargeable with such contributory negligence as to preclude recovery. In other words, he did not exercise that due care for his own safety which the law demanded of him. It was his duty to stop and look and listen, at some point where such conduct would be effective. According to his own testimony, he knew of the obstructions to his view. But if he had not known of them before, he certainly observed them that day when he attempted to see if any train was approaching. Common prudence under such circumstances would dictate that he bring his machine to a full stop before attempting to cross the track. If he had done so, he would undoubtedly have heard the train approaching. But to exercise due care, under the situation as revealed by him, the consensus of the opinion of prudent men would require him, if necessary to ascertain whether his life was in danger, to get out of his machine and go forward a few feet on foot in order that the matter might be placed beyond peradventure. We may say, in passing, that the testimony of plaintiff as to the obstruction of the view seems almost incredible in the light of the whole record, but accepting his statement as true, his misfortune is attributable to his own carelessness.

In *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651], it was said: "But the cases arising from injuries suffered at railroad crossings have been so numerous, and upon certain points there has been such absolute accord, that what will constitute ordinary care in such a case has been precisely defined, and if any element is wanting, the courts will hold as matter of law that the plaintiff has been guilty of negligence." The rule of conduct at railroad crossings is therein stated, and it has been recognized and enforced in all the subsequent decisions of the supreme court.

In *Green* v. *Southern Cal. Ry. Co.,* 138 Cal. 1, [70 Pac. 926], it was held that "as a general rule, one approaching a railroad track must stop and listen, and the only exception to such rule is that there may be particular instances where the circumstances would not call for such precaution." And

in the consideration of the facts of that case, it was said: "The fact that they looked to the east as they passed the gate, or opening, farther up the street as above noted, which was of little benefit to them, is no excuse for not looking or listening at points near the track, where such looking or listening would have been effective."

In *Chrissinger* v. *Southern Pacific Co.*, 169 Cal. 619, [149 Pac. 175], the rule is stated as follows: "A person approach-. ing a railroad track, which is itself a warning of danger, must take advantage of every reasonable opportunity to look and listen. Undoubtedly, the question of contributory negligence or freedom from it is ordinarily one for the jury, but where, as here, the standard of conduct is so obvious as to be applicable to all persons, and the plaintiff has failed to measure up to that standard under the circumstances shown, he is not entitled to have his case go to the jury."

In *Griffin* v. *San Pedro etc. R. R. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282], after reciting the facts, the supreme court said: "From these facts it is clear that Mr. Griffin neglected the simplest and plainest precautions for the safety of himself and the others in the automobile. It is the duty of a traveler on a highway approaching a railroad crossing to use ordinary care in selecting a time and place to look and listen for coming trains. He should stop for the purpose of making such observations when necessary. It is his duty to use all his faculties, and it is not enough if he merely listens, believing that the people in charge of any approaching engine will ring a bell or sound a whistle. . . . He [Mr. Griffin] had his car under perfect control. The brakes had been tightened that day. He was running at a very low rate of speed, and it would have been easy for him to stop a short distance beyond the fence corner at a place of complete safety and one well suited to observation. Failing to do this amounts to contributory negligence on his part." It may be said that Mr. Griffin's negligence in that case was no more manifest than that of plaintiff in the case at bar.

It is true, as declared in the opinions, that the rule requiring the traveler to *stop* is not an absolute one. If the view is entirely unobstructed, the traveler, while going toward a crossing, may see whether a train is approaching in dangerous proximity. Of course, in a case like that it would be idle

to require the traveler to stop to find out something that he can ascertain just as well without stopping. He must, however, avail himself of the vision, and if he is exercising ordinary care, he need not stop except to allow an approaching train to pass so as to avoid a collision. But where the view is obstructed, he must place himself in a position where he can use his faculties of observation to advantage. In such case he stops—not primarily to avoid a collision—but to ascertain whether a collision is threatened. Whereas, if the view is unobstructed, if he stops, it is to allow the approaching train to pass.

It appears entirely clear to us that the foregoing is decisive of the controversy, and that it is really unnecessary to notice other points. However, we may briefly call attention to two other grounds of criticism that would demand a reversal of the judgment.

Among the instructions given by the court was the following: ''The plaintiff, in approaching the railroad crossing on the public highway, referred to in the pleadings in this case, had a right to rely upon the performance by those on the locomotive of every act imposed by the law upon them when approaching a crossing. In the legal sense, he was innocent of negligence, unless there was a want of ordinary care and prudence on his part. . . . The degree of caution required is relative to the risk; but no person is bound to assume that another will abandon any reasonable precaution, or violate the obligation imposed upon him by the laws of the land. Plaintiff was authorized to assume that all other persons using the public highway would do so with due care, and it cannot be imputed as negligence that he did not anticipate that the servants or agents in charge of a railroad train on said highway would not perform their duty of ringing a bell or sounding a whistle as the law required. He had the right to assume, until he reached a point where he would look up and down the track, that no train was approaching the crossing, because there was no sound of an engine, bell, or of a whistle.''

If the traveler had the right to assume that defendant's employees would observe the law requiring them to ring the bell and sound the whistle when approaching the crossing, he would, of course, have a right to rely upon receiving such information of approaching danger and would be entirely

excusable for neglecting to avail himself of any other source of knowledge. Again, if he had a right to so assume, if no bell, as a matter of fact, was rung or whistle sounded, he would have a right to assume that no train was in fact approaching, and he would not be chargeable with negligence if he acted upon that assumption and proceeded to cross the track.

In *Huston* v. *Southern California Ry. Co.*, 150 Cal. 703, [89 Pac. 1093], it is said: "It is not the law of this state that a person approaching a railroad crossing is authorized to assume that the person operating a train will not in any way be negligent in that operation. This doctrine has been asserted in some of the states, but is opposed to the law as laid down in the decisions of this state and of the supreme court of the United States. Such a rule would abrogate the doctrine of contributory negligence in all such cases."

There is manifestly another fatal error lurking in the last clause of the instruction. Therein, the court plainly invaded the province of the jury in a matter of vital importance. It was probably an inadvertence to declare that "there was no sound of an engine, bell, or of a whistle," but the effect was the same, whether the statement was intentionally made or not. If the evidence had all been in favor of respondent's contention, it might be said that such declaration was without prejudice, but on this point there was a sharp conflict in the testimony. The engineer, the two brakemen, and the firemen testified that the whistle was sounded and that the bell was rung up to the crossing, and had been ringing constantly for about two miles, back from the crossing. It is plain, therefore, that the question should have been left to the jury without any suggestion or statement as to the fact by the court.

Again, it is plain that the negligence of appellant, if any, which was the proximate cause of the injury, consisted in running the train at a high rate of speed without sounding any warning of its approach. But these acts of commission and omission were the acts of appellant's agents whom we have already mentioned. Appellant did not, of course, actually participate in running the train, but it is liable, if at all, upon the theory that it is responsible for the want of care on the part of its servants. The jury found, however, that said servants were not guilty of any negligence. It

would follow that appellant was acquitted of any dereliction in running the train.   In *Bradley* v. *Rosenthal,* 154 Cal. 420, 425, [129 Am. St. Rep. 171, 97 Pac. 875], it is held that where recovery is sought, based upon the act or omission of an agent, which the principal did not direct, and in which he did not participate, an acquittal of the agent of negligence is an acquittal of the principal, because the principal's responsibility is cast upon him by law because of his relationship to his agent.

There is some contention that appellant did actually participate in the accident by reason of permitting the growth of weeds so as to obstruct the view of the track.   But from respondent's standpoint upon the assumption that he was exercising ordinary care, it is quite clear from the record that he would have been apprised of the danger if the bell had been properly rung and the whistle sounded.   He can justify his cause of action only upon the theory that these precautions were omitted.   If he had conceded that these usual warnings were sounded, he would have had no cause with which to go to the jury, as he showed no reason why he would or could not have heard them in time to avoid the collision. Indeed, he alleges in his complaint that he would have heard the warning if it had been given.   The presence of the weeds simply emphasized the importance and duty of great care on the part of those in charge of the train, and we repeat that since they were acquitted of negligence, the jury, to be consistent, should have gone a step further and exonerated the appellant.

The judgment and order are reversed.

Chipman, P. J., and Hart, J., concurred.