[Civ. No. 1280. Fourth Appellate District.—May 15, 1934.]

H. B. RASMUSSEN, Respondent, v. FRESNO TRACTION COMPANY (a Corporation) et al., Appellants.

542

Everts, Ewing, Wild & Everts, Dan F. Conway and L. N. Barber for Appellants.

David E. Peckinpah for Respondent.

MARKS, J.—This action grew out of a collision between an automobile driven by respondent and a street car of the Fresno Traction Company, operated by W. E. Zoerb. The accident occurred shortly before 12 o'clock noon on the twenty-second day of February, 1932, at the crossing of West Avenue by the street-car tracks, just outside the city limits of the city of Fresno. West Avenue runs in a northerly and southerly direction. It is intersected at right angles by the double tracks of the Fresno Traction Company, which occupy its private right of way both east and west of the intersection.

Respondent was seriously injured in the accident and a judgment of two thousand dollars was rendered in his favor. Appellants urge that respondent was guilty of contributory

negligence as a matter of law in the operation of his automobile and that the trial court erroneously instructed the jury upon the doctrine of the last clear chance.

The evidence is conflicting in but two particulars, namely, the descriptions given by respondent and Zoerb concerning the happening of the accident.

Respondent testified that he lived on a chicken ranch about a mile north of the intersection; that at about 11:30 o'clock on the morning of February 22d he left his home in his automobile to deliver half a case of eggs to a customer on Belmont Avenue, a short distance southerly from the intersection; that the eggs were in a packing case resting on the floor between the front and rear seats of the automobile; that he had traveled over the intersection a great many times and was familiar with it; that he drove southerly on West Avenue at a speed of about fifteen miles an hour; that when he was at a point about ten feet northerly from the southerly tracks he brought his automobile almost to a stop and shifted into second gear; that he looked in both directions for approaching cars; that none was approaching from the east but that the car involved in the accident was about three hundred feet westerly from the intersection and traveling easterly on the southerly tracks; that he did not know the speed at which the street car was traveling; that believing he could cross safely he proceeded at a speed of about five miles per hour without again looking at the approaching street car; that while traveling in second gear at a speed of five miles an hour he could have stopped his automobile almost instantly; that the crossing was rough and he continued at the rate of five miles an hour in order to keep from breaking the eggs; that the street car struck the rear of his automobile, practically demolishing it and seriously injuring him. The forward eight feet of the automobile was not injured in the collision.

Zoerb testified that he was proceeding in an easterly direction on the southerly tracks of the Traction Company's right of way at a speed of twenty miles an hour; that he was making change for a passenger; that when this was completed he was about seventy-five feet from the crossing; that he then looked ahead and saw respondent's automobile traveling southerly on West Avenue at a point about one hundred twenty-five feet from the intersection and at a speed of

from thirty to thirty-five miles per hour; that he proceeded on his way and when the street car was about thirty feet from the oiled portion of the intersection the automobile was traveling southerly without reducing its speed; that he then for the first time realized that respondent was intending to proceed across the intersection and that a collision was imminent; that he applied his air brakes, rang the gong of the street car but could not stop and the collision ensued; that the street car traveled forty feet after it came into contact with the automobile.

The trial judge gave the following instruction to the jury. Appellants maintain it is reversible error.

"Even though you find from the evidence that plaintiff was negligent in the beginning and that by reason of his negligence placed himself in a dangerous position from which he was unable to extricate himself by the use of ordinary care then if the defendant W. E. Zoerb discovered the plaintiff's peril and neglected to do some act within his power, which if done would have prevented the injury, you must find for the plaintiff and against the defendants. In other words if plaintiff negligently started his automobile across the track of the defendant Fresno Traction Company in the path of the oncoming car being driven by defendant W. E. Zoerb, and was thereafter by the use of ordinary care, unable to avoid a collision with said street car, then if you find that the defendant W. E. Zoerb discovered plaintiff's peril in time to avoid a collision by some act and that he neglected to do that act, then you must find for the plaintiff."

In approaching the question of the contributory negligence of respondent and the applicability of the doctrine of the last clear chance, which involves the correctness of the challenged instruction, we must determine the reciprocal duties which the law requires of the driver of an automobile approaching a crossing, and of the operator of the street car also approaching a crossing while traveling on the private right of way of the Traction Company outside of an incorporated city. They are clearly defined in the case of *Billig* v. *Southern Pacific Co.*, 192 Cal. 357 [219 Pac. 992, 994], where it is said:

"In the recent case of *New York Lubricating Oil Co.* v. *United Railroads*, 191 Cal. 96 [215 Pac. 72], it was declared that the rule governing the duty of a person approaching a

suburban electric railroad track at a crossing was the same as that required of a person approaching or crossing the tracks of a steam railway, citing *Martz* v. *Pacific Electric Ry. Co.*, 31 Cal. App. 592 [161 Pac. 16] ; *Heitman* v. *Pacific Electric Ry. Co.*, 10 Cal. App. 397 [102 Pac. 15] ; *Simoneau* v. *Pacific Electric Ry. Co.*, 159 Cal. 494 [115 Pac. 320] ; *Phillips* v. *Washington & R. Ry. Co.*, 104 Md. 455 [10 Ann. Cas. 334, 65 Atl. 422].  ▇ In the foregoing cases and in others yet to be cited the rule is that it is the duty of a person approaching the crossing of a suburban railroad being operated outside of the limits of cities, whether the same are steam or electric railroads or are railroads upon which motor-cars propelled by gasoline are being used, to stop and look and listen for such approaching trains or cars and to yield the right of way to such trains or cars. (*Green* v. *Southern Cal. Ry. Co.*, 138 Cal. 1 [70 Pac. 926] ; *Murray* v. *Southern Pac. Co.*, 177 Cal. 1 [169 Pac. 675] ; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651] ; *Griffin* v. *San Pedro L. A. & S. L. R. Co.*, 170 Cal. 772 [L. R. A. 1916A, 842, 151 Pac. 282] ; *Thompson* v. *Southern Pac. Co.*, 31 Cal. App. 567 [161 Pac. 21] ; *Basham* v. *Southern Pac. Co.*, 176 Cal. 320 [168 Pac. 359] ; *Simoneau* v. *Pacific Elec. Ry. Co.*, 159 Cal. 494 [115 Pac. 320] ; *Loftus* v. *Pacific Elec. Ry. Co.*, 166 Cal. 464 [137 Pac. 34] ; *Heitman* v. *Pacific Elec. Ry. Co.*, 10 Cal. App. 397 [102 Pac. 15] ; *Baker* v. *Southern Pac. Co.*, 184 Cal. 357 [93 Pac. 765] ; *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259, 262].) In the case last above cited the court in applying the foregoing rule to the facts of that case said: 'The law presumes that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing. Absentmindedness or forgetfulness will not suffice as an excuse for the neglect of a person about to cross a railroad track to look and listen for a possible approaching train. And a person who attempts, regardless of warnings, to cross in front of a moving train, even though he be apparently in a condition of mental abstraction and consequently indifferent to the peril of his situation, is nevertheless negligent'; and upon a former appeal of the same case this court, upon the same facts, held that such a person would be negligent as a matter of law. (*Young* v. *Southern Pac. Co.*, 182 Cal. 369 [190 Pac. 36].)

■ "Turning from the right and duty of persons approaching upon a highway at its intersection with a suburban railroad to the right and duty of the engineer or motorman in charge of such suburban train or car in approaching such intersection, this court has held in numerous and uniform cases that such engineer and motorman has the right to presume that a person thus approaching the crossing of a suburban railway will perform the duty which the law imposes upon him under the foregoing authorities, and in the reasonable exercise of his faculties of observation and caution will not essay such crossing until the danger due to the approaching train or car has passed, and it has accordingly been held that the operator of such train or car was not bound to check the otherwise rightful speed of his train or car in approaching and passing such crossing until at least he has reason to believe that such person so approaching such crossing is not performing, or is not likely to perform, his duty in the foregoing regard. In the case of *Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359], the rule is thus stated: 'When a person is approaching a place of danger and all of the warnings of the danger have been given that reasonable care requires, those in charge of the dangerous engine, seeing him thus acting are not obliged to presume, and it cannot be said that they act unreasonably in not presuming, that the person will continue his approach until he gets into the very place of danger, when it is obvious that he could with the least care stop and avoid it.' "

Appellants contend that respondent was guilty of negligence as a matter of law in driving onto the street-car tracks in front of a street car which he saw approaching on the private right of way of the Traction Company. This case is factually similar to *New York Lubricating Oil Co.* v. *United Railroads,* 191 Cal. 96 [215 Pac. 72, 73], except that here the street-car tracks were level and there is no showing that the street car was coasting or was being propelled at an excessive rate of speed. In that case, in holding the driver of the motor vehicle guilty of contributory negligence as a matter of law, the Supreme Court said: "There is no escape from the conclusion, it seems to us, from the uncontradicted evidence as above outlined, that the driver of the truck, although fully aware of the approach of the car, closed his eyes to the danger necessarily involved in any attempt to

cross the track, and blindly drove his truck into the path of the oncoming car, and was, therefore, guilty of contributory negligence as a matter of law. (*Martz* v. *Pacific Electric Ry. Co.*, 31 Cal. App. 592 [161 Pac. 16].)

"Admittedly the driver of the truck not only could see, but actually did see, the car as it came down the descent at an excessive rate of speed. And if he could, as the evidence shows without contradiction, have stopped his truck at any time prior to the collision within a distance of three feet, then surely his failure to do so under the shown circumstances of an obvious and imminent danger was a failure to exercise that ordinary care which a reasonably prudent man is required by the law to exercise in such a situation. The failure of the driver of the truck to come to a stop upon the approach of the car is attempted to be justified by the admitted fact that he did not note the speed of the car, but relied upon the assumption that the car was going at its 'regular rate of speed', and that, therefore, he had time to safely cross. It was the duty of the driver of the truck upon approaching the crossing to give way to the car, if necessary, to avoid a collision. (*Arnold* v. *San Francisco-Oakland Terminal Rys.*, 175 Cal. 1, 5 [164 Pac. 798].) . . . It was the duty of the driver of the truck to note the speed at which the electric car was approaching the crossing, and if, when the driver of the truck last looked at the approaching car, it was within such a distance and going at such an apparent rate of speed as to cause a reasonable apprehension of danger, it was undoubtedly negligence on the part of the driver to attempt to make the crossing. (*Martz* v. *Pacific Electric Ry. Co., supra.*)

"It is the rule in this state that where the physical facts shown by the undisputed evidence raise the inevitable inference that a person approaching a railroad crossing did not look or listen, or that, having looked and listened, he endeavored to cross immediately in front of a rapidly approaching train which was plainly open to his view, he is, as a matter of law, guilty of contributory negligence."

Respondent, while not admitting his contributory negligence, urges that if he be held guilty thereof, Zoerb had the last clear chance to avoid the injury and that the judgment must be affirmed. Appellants reply that the doctrine of the last clear chance does not apply to the facts

before us but that if it be held to apply, the instruction given does not correctly state the law of that doctrine. The argument that the doctrine is not applicable may be divided into three heads: (1) That the undisputed testimony of Zoerb is to the effect that he did not realize the dangerous position of respondent until the street car was within thirty feet of the intersection, and that it was then impossible to avoid the collision; (2) that had respondent used ordinary care he would have extricated himself from his position of danger; (3) that the negligence of respondent continued up to the moment of the impact and actively contributed to his injury. The last two contentions are so closely related that they will be considered together.

It is true that the motorman testified that he did not realize the position of danger of respondent until the street car was within thirty feet of the intersection and no witness contradicted this evidence by any direct testimony. However, it seems to be the rule that the jury is not bound to accept the evidence of the motorman upon this question, where there is other evidence in the record, either direct or circumstantial, from which the conclusion might be reached or the reasonable inference drawn that the motorman saw and realized the dangerous position of the injured party at a place where, by the use of ordinary care, he could have avoided the accident. (*Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663]; *Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238]; *Zerbo* v. *Electrical Products Co.,* 212 Cal. 733 [300 Pac. 825]; *Smith* v. *Los Angeles Ry.,* 105 Cal. App. 657 [288 Pac. 690, 691]; *Handley* v. *Lombardi,* 122 Cal. App. 22 [9 Pac. (2d) 867].) In the last-cited case it was said: "The court instructed the jury on the last clear chance doctrine and appellant claims error on that ground. The case is on all-fours with *Smith* v. *Los Angeles Ry. Exp. Co.,* 105 Cal. App. 657 [288 Pac. 690, 691], wherein it was held that the jury was properly instructed on the doctrine of the last clear chance. . . . Specifically, appellant claims that since appellant testified that he did not see the truck until he was almost upon it, there was no evidence from which the jury could find that he had actual knowledge of the danger of collision before it was too late to avoid it. A similar claim was disposed of in the Smith case in the following language: 'The motorman testified that he did not see plain-

tiff on the tracks until the car was within some 30 feet of the wagon, and that the horses were then upon the track. It is contended that there is no other evidence in the record which would justify a contrary finding. The track, for some blocks leading to Third street, was straight; one could see for several blocks; the motorman himself admitted he could see for some 150 feet ahead. He was sitting on his chair at the front of the car, with his hand on the control, for several hundred feet while approaching the scene of the injury. The wagon was moving at the very slow speed of three miles per hour. The car was moving about eight times as fast, or some 25 miles per hour. The wagon had proceeded some 12 feet into the path of danger before being struck. Under all the circumstances . . . the jury might have found that the motorman saw plaintiff in time to have avoided the injury, and while plaintiff was actually in peril.' The same inference could have been drawn in the case in hand.''

In the instant case the motorman stopped his car within seventy feet from the place where he said he first realized the danger. In view of the conflicting evidence as to the position on the road of respondent and the evidence of Zoerb that he saw him when the street car was seventy-five feet from the intersection the jury might have concluded that Zoerb then saw and realized that a collision was imminent and that respondent could not extricate himself when the street car was seventy-five feet from the point of collision and that Zoerb could have applied his brakes immediately and stopped the street car before it came into contact with the automobile.

As a general rule it may be considered well established in this state that if the injured party by the use of ordinary care could have extricated himself from his dangerous position, or, if there was concurrent and contemporaneous negligence on the parts of the injured and the one causing the injury, or, if the injured person was guilty of negligence which at the moment of the collision actively contributed to his injury, he cannot invoke the doctrine of the last clear chance. There are circumstances which either constitute an exception to this rule or to which it does not apply in all its strictness. The instant case seems to fall within those circumstances. The cases of *Smith*

v. *Los Angeles Ry., supra,* and *Handley* v. *Lombardi, supra,* are factually similar to the instant case in so far as the applicability of the doctrine of the last clear chance is concerned. As petitions to have both causes heard in the Supreme Court were denied we feel constrained to follow them on the question we are considering. In the Smith case it was said: "Another situation which appellant contends should bar plaintiff from the benefit of the rule is where the negligence of the injured party was contemporaneous, concurrent, continuing and contributory with the negligence of the party inflicting the injury. (*Young* v. *Southern Pac. Co.,* 189 Cal. 754 [210 Pac. 259].) The law is well settled in this state that the rule cannot be applied to a situation where the negligence of the deceased continued to the moment of the impact and actively contributed to his own injury. The injured party being actively and contemporaneously at fault until the moment of the collision, he is barred from the right to recover for any act up to that time. (*Green* v. *Los Angeles T. Ry. Co.,* 143 Cal. 31, 41 [101 Am. St. Rep. 68, 76 Pac. 719].) ■ The liability is placed upon the party inflicting the injury only if, immediately before the actual infliction of the injury, the injured party was in such a situation as to be unable, by the exercise on his part of reasonable and ordinary care to extricate himself, and vigilance on his part would not have averted the injury. (*Young* v. *Southern Pac. Co., supra.*) In other words, the 'last clear chance' must be solely upon the part of the person inflicting the injury. If both parties have that chance it cannot be said that there is any 'last clear chance' at all. ■ However, if plaintiff was oblivious to or unconscious of his position of danger, the question of his duty to extricate himself does not arise, and the doctrine is applicable. . . . We are satisfied that there is evidence in the record from which a jury could reasonably conclude that although plaintiff realized he was in a dangerous position, extrication was physically impossible, or they could have found that plaintiff was oblivious to or unconscious of his position of peril."

■ Appellants contend that the instruction which we have quoted on the doctrine of the last clear chance is not a correct statement of the law. The elements of the doctrine necessary for our measuring the sufficiency of this

instruction are clearly stated in *Bagwill* v. *Pacific Electric Ry. Co.*, 90·Cal. App. 114 [265 Pac. 517], where it is said: "This doctrine presupposes that the plaintiff has been negligent; that as a result thereof he is in a situation of danger from which he canot escape by the exercise of ordinary care; that the defendant is aware of plaintiff's dangerous situation under such circumstances that he realizes or ought to realize his inability to escape therefrom; that the defendant then has a clear chance to avoid injuring the plaintiff by the exercise of ordinary care and fails to avail himself of the opportunity so presented."

██ It should be observed that the injuring party cannot be held liable unless he can avoid the injury *by the exercise of ordinary care*. This rule is supported by practically all the cases we have already cited and it is unnecessary to repeat them here. The instruction given entirely omitted this element of the doctrine. In that respect it was erroneous. We believe it was prejudicially erroneous with the provisions of section 4½ of article VI of the Constitution in mind. The liability of the appellants arose solely under the doctrine of the last clear chance. That being the case they were entitled to have the jury properly instructed as to its elements so that their liability could be intelligently determined by that body. The evidence shows that the motorman applied his air brake in his effort to stop the street car, but did not apply the emergency brake. Although a witness testified that the stop was made as quickly with the air brake as could have been done with the other or both, still the instruction required Zoerb to do everything possible to stop his car. The jury might have concluded that under the instruction he was required to apply both brakes, while if a proper instruction had been given they might have concluded that his application of the air brake alone was the exercise of ordinary care by him.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 12, 1934.