[Civ. No. 2008.    Second Appellate District.—October 2, 1916.]

FRANK MARTZ et al., Respondents, v. PACIFIC ELEC-
TRIC RAILWAY COMPANY (a Corporation), Appel-
lant.

NEGLIGENCE—ELECTRIC RAILWAY CROSSING—CAUTION IN APPROACHING.
The rule requiring a person upon approaching a railroad track with intent to cross it to exercise his faculties in order to ascertain whether a train is approaching, is applicable to electric railroads operated under conditions similar to the operation of steam railroads.

ID.—DEATH OF AUTOMOBILE DRIVER—COLLISION WITH ELECTRIC RAIL-
WAY-CAR AT CROSSING—ABILITY TO SEE APPROACHING CAR—FIND-
ING.—In an action for damages for the death of an automobile driver from a collision with a rapidly moving electric railway-car at a crossing, where the question presented to the jury was whether or not a person traveling, as was the deceased, and using reasonable care in observing, would have seen the approaching car, notwithstanding the obstruction of trees and brush along the highway, and notwithstanding the further obstruction made by poles erected at intervals between the railway tracks and carrying the power wires, the conclusion of the jury must be accepted on appeal.

ID.—APPROACHING RAILROAD CROSSING—FAILURE TO USE FACULTIES—
—INFERENCE FROM PHYSICAL FACTS—CONTRIBUTORY NEGLIGENCE.—
Where the physical facts shown by undisputed evidence raise the inevitable inference that the person approaching a railroad crossing did not look or listen, or that having looked and listened, he endeavored to cross immediately in front of a rapidly approaching train, which was plainly open to view, he was, as matter of law, guilty of contributory negligence.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Wm. D. Dehy, Judge presiding.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, and A. W. Ashburn, Jr., for Appellant.

Joseph Scott, A. G. Ritter, and J. B. Joujon-Roche, for Respondents.

CONREY, P. J.—This action was brought by the widow and three minor children of Frank Martz to recover damages on account of the death of Martz, alleged to have been caused by the negligence of the defendant company. The defendant denied the charges of negligence, and set up the defense of contributory negligence on the part of the deceased. The defendant appeals from the judgment and from the order denying its motion for a new trial.

At about 2 o'clock in the afternoon of the first day of February, 1912, Frank Martz was traveling in his automobile in a southerly direction on Santa Anita Avenue in the county of Los Angeles, and was approaching a point where that highway is crossed by the tracks of defendant company. At the crossing a collision took place between the automobile and a car of the defendant. Immediately east and west of Santa Anita Avenue the railroad occupies a private right of way. It is a double-track railroad which runs east and west across the avenue, but curves toward the south at a point beginning about one hundred yards west of the avenue. The curve is such as that at a distance of one thousand feet west of Santa Anita Avenue cars beyond that point are not visible from the avenue. Appellant claims that the evidence is such as to compel the conclusion that no negligence was established on the part of the defendant, and also very earnestly contends that contributory negligence on the part of the deceased was conclusively established. For these reasons it is claimed that the court erred in refusing to instruct the jury to render a verdict for the defendant.

At the same time when Mr. Martz coming from the north was approaching the railroad, an express car of the defendant was traveling in an easterly direction on defendant's southerly track. Santa Anita Avenue is constructed in two roadways separated by a row of eucalyptus trees down the center. On the westerly side of the west roadway of Santa Anita Avenue, and north of the defendant's right of way, there was at the time of the collision a small white building

about thirty-two and one-half feet long, located about forty-seven feet west of the westerly line of the highway, and about forty-three feet north of the south track. Along the westerly side of the west roadway was a row of tall eucalyptus trees, about ten feet apart. A sign-board, marked "Railroad Crossing—Look Out for the Cars," had been placed at the intersection of the right of way with the westerly roadway, and the railroad tracks were raised slightly above the level of the roadway upon which Martz was traveling, thereby rendering the tracks plainly visible to one occupying his position. No persons but the motorman and conductor of defendant's car (so far as the evidence shows) saw the deceased at the time of the accident, and they saw him only for an instant immediately preceding the collision. There is no testimony from any observer as to whether the deceased looked or listened for the approach of the car. The motorman testified that his car was traveling eighteen or twenty miles an hour, and that the deceased was traveling "as fast as I was going, maybe a little faster." In addition to the foregoing undisputed facts, appellant claims that the evidence shows that the branches of the eucalyptus trees were high above the traveler's head, and did not materially obstruct the traveler's view in looking to the west; and that the tracks with poles and wires were plainly visible to the traveler; and that it is also certain that Martz "made no effort to avoid the approaching train, for the marks of his automobile on the ground showed that he was headed due south and had not swerved in either direction." Appellant admits that there was conflict in the evidence as to whether warning was given by blowing of the whistle on defendant's car, but claims that the negative testimony of plaintiff's witnesses that they heard no whistle blown is not entitled to credit as against the positive testimony of other witnesses who said that they heard the whistle. Appellant further admits that the evidence as to the rate of speed at which defendant's car was traveling varies from eighteen to thirty miles an hour. There is evidence tending to show that the branches of the eucalyptus trees were above the traveler's head, but there is also testimony that there was an undergrowth extending upward from the ground, and that the limbs of the trees came down and met this undergrowth; that there were sprouts growing up from the trees which were as

much as five feet long; that these were suckers from the roots of the trees and grew out like a bush. Under these conditions it is likely that there would be spaces through which one traveling along the road, as the deceased was traveling before he came to the small building, possibly could have seen an approaching car, and that a large part of the space so occupied by the trees was so obstructed that through the space thus occupied it was impossible to have seen the cars. The question presented to the jury was whether or not a person so traveling and using reasonable care in observing would have seen the approaching car, notwithstanding the obstructions of trees and brush along the highway, and notwithstanding the further obstruction made by poles erected at intervals between the railroad tracks and carrying the power wires. We are not warranted in saying that as a matter of law, under these conditions, the deceased would have seen the car if he had made a reasonable effort to use his powers of observation before he reached the point where the building entirely obstructed his view in that direction. Therefore, as to this fact, we must accept the conclusion of the jury. And we are likewise bound by their implied finding that no warning whistle was sounded by the motorman.

Assuming, then, that Martz was not negligent in failing to observe the approaching car while he was farther north than the above-mentioned building, or while he was traveling along the road opposite that building, we must now consider the situation as it existed between the point in the avenue where the building no longer obstructed his view to the west and the south track of the railroad where the collision occurred. The testimony of the witnesses is aided by certain photographs shown in the record. As above stated, the building was forty-three feet north of the south railroad track, and about forty-seven feet west of the westerly line of the highway, which would be probably about sixty feet west of that part of the highway in which the automobile was traveling. Under these conditions the railroad tracks west of Santa Anita Avenue along which the electric car would approach the crossing would be plainly visible from the automobile during at least the last sixty feet of its approach to the south track. And, as shown by the photographs, the curve of the railroad is such that the approaching

railroad car-would have been plainly visible if it was any-where within one thousand feet of the crossing.

The evidence shows that Mr. Martz was fifty-two years old, in good health, and had been using this automobile nearly a year. On the day of the accident he was driving alone. It appears that he had never driven over this rail-road crossing until that day. But as above shown, the rail-road track at the point of crossing, and a sign-board of warning, were in plain view in front of the deceased as he came down the road. This being so, even if (as we must assume to be the fact) he had not seen any approaching car before coming opposite the white building, it was his duty to approach the crossing with reasonable care to have his auto-mobile under control. If we assume that he did this, then when he came within sixty feet of the southerly railroad track he was in a safe situation at all events. If there was no approaching car within a distance of one thousand feet, he would have ample time to cross. For at the rate of thirty miles per hour the railroad car would require at least twenty-three seconds to reach the point of intersection; whereas the automobile, even at a five-mile rate, would be across in eight seconds. On the other hand, if the approaching railway car was anywhere within the distance of one thousand feet, Mr. Martz must have seen it if he made the most ordinary use of his faculties, and this at least he was bound to do. (*Griffin* v. *San Pedro etc. R. R. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282].) The rule is applicable to elec-tric railroads operated under conditions similar to the opera-tion of steam railroads. (*Loftus* v. *Pacific Elec. Ry. Co.*, 166 Cal. 464, [137 Pac. 34].) And if the car thus observed by the deceased was approaching at such speed, and was then within such distance as to cause reasonable apprehension of danger, it was negligence on the part of the automobile driver to attempt such a crossing. Such attempt would be the voluntary assumption of a risk, and for injuries resulting therefrom, and which the defendant then had no further opportunity to avoid, the law does not intend to provide compensation.

The only other alternative state of facts which seems pos-sible under the evidence is that Mr. Martz came down the avenue and into the zone of danger at a rate of speed which was reckless under the circumstances; and thus heedlessly

placed himself where the concurrent negligence of the defendant caused his death. In this case also there is no right of recovery. Where the physical facts shown by undisputed evidence raise the inevitable inference that the person approaching a railroad crossing did not look or listen, or that having looked and listened, he endeavored to cross immediately in front of a rapidly approaching train that is plainly open to his view, he is as matter of law guilty of contributory negligence.

It seems clear that there is no situation shown upon any possible state of facts consistent with the evidence which can authorize a verdict such as was rendered in this case. The defendant was clearly entitled to a verdict in its favor. Having reached this conclusion, we deem it unnecessary to discuss alleged errors in the instructions given to the jury. With respect to the objections urged against those instructions, we express no opinion.

The judgment and order are reversed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 1, 1916.