[Civ. No. 4396. Third Appellate District.—September 27, 1932.]

EUGENE FRIDDLE (a Minor), etc., et al., Respondents,
v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

J. M. Walthall, William H. Devlin and Devlin, Devlin & Diepenbrock for Appellant.

P. O. Solon and W. H. Hollander for Respondents.

PRESTON, P. J.—This is an appeal by defendant Southern Pacific Company, a corporation, from a judgment entered against it upon a verdict of a jury in the sum of $25,500. The plaintiffs are two minor children and the widow of Glen Friddle, who was killed on the twenty-first day of March, 1929, by reason of a collision between an autotruck, which said Glen Friddle, as the sole occupant, was driving, and a passenger train of the appellant. The case was dismissed as to all defendants save appellant Southern Pacific Company. A motion for a new trial was made and denied.

The facts necessary for a correct understanding of the questions involved on this appeal may be thus briefly stated:

Glen Friddle was a young man of the age of twenty-five years and was engaged in the occupation of truck driver. His place of occupation was at or near the town of Crows Landing in Stanislaus County. The Southern Pacific Company operates its lines through the said town, among which trains is the passenger train generally known as "The Owl", being one of the company's fast trains operating between San Francisco and the empire south of Tehachapi. Near

Crows Landing is an open country crossing where the main traveled highway intersects the tracks of appellant company. To effect this crossing the highway makes a turn, effecting, upon completion, a right angle to its prior course. Up to the point where the highway turns the general course thereof parallels the track, the outer line of the highway being some 62 feet distant from the railway.

Glen Friddle, the deceased, was familiar with the locality and had been, for some months, in the habit of traversing the crossing at least three times a week and always at an early hour in the morning, ranging between 4 o'clock A. M. and 6 o'clock A. M.

On the morning of the accident Friddle and one Carvelho were proceeding in separate trucks to a slaughter-house which was located about a mile distant from the crossing. Carvelho was ahead of Friddle as they proceeded along the highway in a northerly direction. Carvelho reached the crossing first. While upon the tracks he looked back to ascertain the whereabouts of Friddle and saw the latter approaching the crossing at a distance of some 200 yards back. Carvelho testified that, though he was not looking for the train, he, nevertheless, did see the train approaching at a distance of some five or six hundred yards down the track. It was then 5:30 A. M. and the light condition may be described as twilight. Carvelho could see the lights of the train plainly and could see the engine. As noted, when Carvelho looked to locate Friddle, the latter was some 250 yards behind and traveling at a uniform speed approximating 35 miles per hour. Carvelho testified that he heard no whistle, bell or other warning given by the train.

Aside from testimony offered to support the claim of damage the foregoing constituted plaintiffs' case. It was admitted that deceased met his death as a result of the collision between the train and the truck.

Testimony was adduced in behalf of appellant showing that the train was proceeding on its own right of way at a speed of 50 miles per hour. The usual crossing whistle was blown at a point a quarter of a mile distant from the crossing. The engine was equipped with a bell conforming in weight and construction to the legal requirement and the bell was continuously sounded by means of automatic control. Without detailing the evidence, the claim of appel-

lant was that decedent did heedlessly, recklessly, negligently and without regard for his own safety rush his truck head-long into the path of the train, with the consequent disastrous result.

The appellant advances two main contentions in support of its appeal. First, it contends that there was no negligence shown as against the company or any of its agents or employees; secondly, that even if such negligence can be found from the facts, then the negligence of the decedent so far contributed to the result that no recovery can be had.

No claim is urged that the speed of the train was excessive and there is absolutely no evidence on that point. It is true that under certain conditions, into which may enter many varying factors, a speed of 50 miles per hour would be an excessive and dangerous speed. But the mere statement that such a speed was being maintained, with no further evidence as to conditions or surrounding circumstances, furnishes no foundation for any slight inference of negligence.

The only evidence as to surrounding conditions indicates that at the particular place here involved the railway right of way ran through an open country over an area in plain and unobstructed view. It is not the function of the courts to fix the speed or schedule of railroad transportation nor to arbitrarily determine the rate of speed permissible. There is not a word in the record indicating any negligence in the matter of speed.

Indeed, excepting the reliance upon the presumption hereinafter to be noted, the sole act of negligence charged against the appellant is its failure to sound an alarm.

The only testimony on this point offered by the plaintiffs is the testimony of Carvelho to the effect that he heard no whistle, bell or other signal of warning.

The value of negative testimony is relative. That is to say, in determining the effect to be given such testimony, we must take into consideration all of the circumstances surrounding the witness giving such testimony. In the first place, Carvelho testified that he was not looking for the train but happened to see it in looking backward for Friddle. His attention was at no time specifically or intently directed toward the engine or cars. The train was then some 500 to 600 yards distant, and Carvelho was

directly on the track. Estimating the distance roughly to be approximately one-third of a mile, it would take a train traveling at 50 miles per hour just 24 seconds to reach the crossing where the collision occurred. In those 24 seconds Carvelho, traveling at 35 miles per hour, would have reached a point less than 400 yards from the scene of the collision.

The testimony is without dispute that when the train hit the truck there was a loud explosion, either of gasoline or some other explosive, the noise of which was heard for several blocks around. Carvelho, only some 400 yards away, did not hear this explosion, nor did he hear anything of the crash. He did not know that anything unusual had happened until he drove on to the agreed meeting place and after a brief wait, surmising from the absence of Friddle that something had happened, returned to the crossing.

These facts tend to render the negative testimony of this witness of little weight, and while it is not our province to scrutinize with extreme nicety of detail any claimed conflict of evidence, yet we are brought fully within the rule announced in *Wenban Estate* v. *Hewlett,* 193 Cal. 675, at page 693 [227 Pac. 723], that evidence may be so nebulous and evanescent as to render it nothing more than a mere pretense of evidence, and therefore it may be said that, as a matter of law, it is not evidence at all and does not contradict or tend to contradict, either directly or by justifiable inference, the positive evidence against it.

*The positive evidence of the entire train crew is to the effect that not only was the whistle blown a quarter of a mile from the crossing but also at the point where the truck came into view approaching the track. Further it is the positive evidence of the fireman and engineer on the train that the bell was being constantly sounded.*

The evidence of the whistling is likewise adduced by persons resident of the town of Crows Landing and whose attention was being directly attracted thereto. For instance, the night watchman who timed his period of employment by the arrival of the train and also a neighbor who regulated her arising by the whistle of the Owl train. Thus the only claimed evidence of negligence is entirely dispelled.

We next approach the claim of contributory negligence. Under the facts as shown there can be no logical argument presented against this contention.

Railway crossing cases are without number both in this jurisdiction and throughout the entire nation. The subject is carefully, thoroughly and most ably reviewed in the case of *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788], and the mere reference thereto will suffice.

The physical facts of the instant case speak for themselves and there can be no doubt that had decedent stopped, looked and listened, as the law required him to do, he would have been warned at a safe distance from the main track of the approach of the said train and the hazard he would assume in attempting to cross the railroad crossing ahead of the train.

We have an unobstructed crossing with a clear view of the track in both directions. Friddle was operating his truck at a distance of some 62 feet from the right of way and running parallel with the train and in the same direction. According to the testimony of plaintiffs the train, approaching at 50 miles per hour, had but one-third of a mile to cover to reach the crossing and said train was clearly visible. Friddle had about one-eighth of a mile to cover to reach the crossing and a turn to make in his journey. He was familiar with the territory and knew that trains did pass over the track at the point of crossing. It is not conceivable that any person, using the ordinary senses, could have failed to observe the approaching train.

As a matter of calculation the situation demonstrates itself. Friddle going 35 miles per hour would have reached the crossing, from the point at which Carvelho observed him, in approximately 15 seconds. The train, from the point observed by Carvelho, would have reached the same point in 24 seconds, leaving in the approximation only nine seconds within which to figure out the crossing ahead of the train. With this picture, it would be idle to attempt to show ordinary care or prudence on the part of the deceased. In order to justify the conduct of the unfortunate decedent we would first be compelled to overrule every known California case on rairoad crossings.

It may be noted that respondent does not seriously question the existence of negligence upon the part of decedent (passing for the purposes hereof the application of the presumption of due care), but it is the contention of respondents that contributory negligence is entirely out of

the case by reason of appellant's failure to affirmatively plead such a defense. This brings us to the pleadings of appellant. Appellant's answer, filed in the court below, is as follows:

"That said Glen Friddle met his death by and through his own negligence and that his own negligence was the proximate cause of his death in this that the said Glen Friddle at the time of and for some time prior to said accident had knowledge that the highway crossed the railroad track at the point of the accident and immediately preceding the accident knew that he was approaching a railroad crossing and that notwithstanding said facts said Glen Friddle approached said crossing and attempted to cross said railroad track at said point without stopping, looking or listening and negligently failed to make use of his sense of understanding, sight and hearing at the time said train was approaching and that by reason of the said negligence of said Glen Friddle, he was struck and killed at the time and place in said plaintiffs' First Amended Complaint alleged."

It is difficult to see wherein this pleading is insufficient to present the issue of contributory negligence. It is true that in a discussion between counsel at the trial, counsel for appellant equivocally conceded that contributory negligence was not an issue but this concession was always with the stout insistence that the appellant was guilty of no negligence and that the accident was caused solely through the negligence of decedent. Both counsel in the discussion seemed to be adroitly maneuvering the other into some sort of an admission.

Appellant's counsel and respondents' counsel both were of the impression that in order to advance the defense of contributory negligence it was necessary that defendant first admit its own negligence. This the appellant declined to do. In this appellant was correct. In *Sheets* v. *Southern Pac. Co.*, 212 Cal. 509, at page 515 [299 Pac. 71], the court said: "It is not the law that a plea of contributory negligence is an admission of culpable negligence on the part of the defendant. A defendant may deny that he was guilty of any negligence and at the same time consistently claim that, even if the jury should find that he has been negligent, the plaintiff would not have sustained the injury

if it had not been for his own negligence as the proximate cause." This is exactly what appellant did here.

In *Hoffman* v. *Southern Pac. Co.*, 84 Cal. App. 337, at pages 346 et seq. [258 Pac. 397], this question of pleading is elaborately discussed. As a matter of interpretation and construction, the greater always includes the lesser and where, as here, the defense is made that the negligence of plaintiff was the proximate cause of the injuries the allegation would include any negligence that contributed to the said injuries.

As stated in the Hoffman case, it would seem an absurd proceeding to put the defendant at the risk of absolving himself from all negligence before he could advance the defense of contributory negligence.

Here the appellant did plead specifically the facts going to show the negligence of deceased, and whether it described this negligence as the sole cause of the accident or the contributing cause could make no difference in the effect of the proven facts. Regardless of the argument between counsel the trial court did instruct the jury upon the doctrine of contributory negligence and did consider such negligence to be an issue in the case.

Lastly, respondents earnestly contend that it is the settled law of California that the decedent in the case at bar is presumed to have done everything that a reasonably prudent man would have done under the circumstances for the protection of his own safety and that this presumption, while disputable, is evidence in the case.

Following up this contention it is then urged that, giving the presumption the weight of evidence, a sufficient conflict appears which will preclude the interference of an appellate court. Naturally, reliance is had upon the case of *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]. However, the Smellie case sets forth certain clear limitations. In passing, it must be noted that this case went through several hearings and rehearings and must be classed as one most thoroughly considered, and being of such far-embracing nature we must assume that every phase of the problem was carefully analyzed before opinion rendered. With this in mind, we must give to the language used its exact meaning. Two things are definitely announced by the court in that case. Quoting from page 552:

"In the Mar Shee case it was held that a fact is proved against a party relying on the presumption 'by the uncontradicted testimony of the party himself, or of his witnesses, under circumstances which afford no indication that the testimony was the product of mistake or inadvertence, and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.' This is undoubtedly true, but it does not necessarily follow that the presumption may not be overcome or 'dispelled' as a matter of law by proof of the party against whom the presumption is invoked."

Quoting from page 555 of the opinion cited we find:

"When the presumption is invoked by a party and his evidence is not inconsistent therewith, it is in the case provided, of course, the evidence sufficiently establishes a sphere or field within which the presumption can operate. Whether it does must, of course, be decided by the trial court as a question of law."

Thus we find one thing definitely decided beyond argument and that is that the presumption falls in the face of evidence produced by the party relying thereon which is inconsistent therewith. The evidence adduced by plaintiff discloses a man familiar with the locality and the conditions there existing driving a truck at a speed of approximately 35 miles per hour. It shows this driver in a position of complete safety on a highway paralleling a railway track upon which is a train approaching a crossing at a speed of 50 miles per hour, which train is at a distance of between 250 yards and 350 yards directly behind the truck. The location of the highway upon which the truck is being operated is 62 feet from the rails. It discloses the driver of the truck, with the train rushing to the crossing, turning from his place of safety directly into the path of the oncoming train. We may then reasonably and seasonably inquire by what process of reasoning can we indulge the presumption that the truck driver exercised due care for his own safety.

Under the law of railroad crossings due care would be measured by certain conduct, namely, that the driver stop, look and listen before attempting to cross a railroad track. The slightest glance by decedent would have disclosed the

danger and the slightest attention would have given him ample warning. The judgment is reversed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.