[Sac. No. 5230. In Bank.—February 14, 1939.]

BLISS I. HINKLE et al., Respondents, v. SOUTHERN
   PACIFIC COMPANY (a Corporation) et al., Defend-
   ants; SOUTHERN PACIFIC COMPANY (a Corpora-
   tion), Appellant.

692

T. L. Chamberlain, Devlin & Devlin & Diepenbrock for Appellant.

Robert E. Burns, Patrick J. Murphy and Peter J. Mullins for Respondents.

M. Mitchell Bourquin, as *Amicus Curiae,* on Behalf of Respondents.

THE COURT.—This is an action for damages for personal injuries suffered by plaintiffs, husband and wife, as a result of a collision between their automobile and a train of the defendant railroad company at a highway crossing. The conductor of the train, Rablin, was joined as a defendant. Other members of the train crew were named in the complaint as First Doe, Second Doe and Third Doe, but were never served with summons. The complaint charged that the said defendants, and each of them, "so negligently operated, conducted and ran a certain train owned by the defendant, Southern Pacific Company, a corporation, in a generally easterly direction, over and along said railroad tracks so as to cause it to, and it did, at said time and place aforesaid collide with the automobile in which plaintiff Bliss I. Hinkle was being driven. . . . " The complaint contained a like count with reference to the other plaintiff, George H. Hinkle. The case was tried in the Superior Court in and for the County of Placer and resulted in a verdict by the jury in the sum of $11,000 in favor of Bliss I. Hinkle, and in favor of George H. Hinkle in the sum of $2,500, against the Southern Pacific Company alone. Motions by said defendant for nonsuit, for a directed verdict, for a judgment notwithstanding the verdicts, and for a new trial, were denied by the trial court. From the judgment entered upon said verdicts, and

from the order denying the motion for judgment notwithstanding the verdicts, this appeal is taken.

The accident occurred at about the hour of 10:20 P. M. on the night of July 31, 1935, at the crossing where highway No. 89, connecting the town of Truckee and Lake Tahoe, intersects the main track of the branch line of the appellant Southern Pacific Company, which runs from Truckee to the summer resort known as "The Tavern" on Lake Tahoe. This railroad crossing is about a quarter of a mile west of the railroad station at the Tavern, and is within the railroad yards maintained by the railroad company. The Southern Pacific Company regularly operates two mixed trains daily over the branch line, one of which arrives at the Tavern at 7:35 A. M. and leaves the Tavern at 10:30 P. M. The highway extends in a northerly and southerly direction. At the time of the collision, respondents were traveling, with George H. Hinkle at the wheel, in their Ford Sedan in a general southerly direction. The train operated by the agents of the Southern Pacific Company, the engineer, fireman and two brakemen, was being backed in an easterly direction toward the Tavern. The train consisted of a locomotive and tender, a dark red box-car and a dark colored oil-tank car. As they were being backed over the crossing, they approached the crossing in the reverse order, the oil-tank car being the lead car which came in contact with the respondents' automobile. Respondent George H. Hinkle is an instructor at Stanford University and his wife is a teacher in a branch of the Placer Union High School. They were on their way to the Tavern Casino to bring their three children and Mr. Hinkle's mother home from the moving picture entertainment which they had been attending at the Tavern Casino. Respondents' home was north of the railroad tracks, and finding the other road to the Casino which was on the south side of the tracks obstructed by the train of the appellant railroad company which was being "made up" preparatory to its schedule leaving at 10:30 P. M., the respondents turned around and took highway No. 89 to reach the Casino. There were three tracks of the railroad company at this crossing, the northerly track, the main line track, and the southerly track. The track is straight at the crossing, but looking east from the crossing, it curves at a distance of 200 feet to the south, and looking west from the crossing, it curves at a distance of 359 feet to the south. The

crossing is a narrow crossing of approximately twenty feet in width, and large pine trees grow within eight or nine feet of the track on both sides of the crossing. It was a very dark night, and there was no overhead artificial lighting at the crossing or any point west of the crossing, the direction from which the train was backing, although there was an overhead light 150 feet to the east of the highway in the direction of the Tavern. There was no automatic electric signaling device nor a mechanical warning of any kind maintained by the railroad company at the crossing. The highway was a good road of asphalt but the pavement between the tracks was corrugated. It was the practice of the railroad company to "spot" or leave empty cars on the northerly or southerly tracks both to the east and west of the crossing, and on the night in question an old-fashioned sleeping coach had been left standing on the northerly track to the east of the crossing.

As often happens in cases of this character, the evidence with reference to the accident was sharply conflicting and the testimony of the witnesses for the appellant, not being reconcilable with the testimony of the respondent and their witnesses, it was necessary for the jury as triers of fact, to determine which of the contrary versions of the accident should be accepted as true. It is self-evident that the jury accepted as true the testimony of the respondents, and necessarily rejected a portion, at least, of the evidence proffered by appellant. It follows that it is incumbent upon this court upon appeal to accept as true the evidence in favor of respondents and to resolve all conflicts in the evidence in their favor.

The testimony of the respondents is to the effect that they were familiar with the crossing, and as they approached it they slowed down, came to a full stop within four to eight feet of the northerly track in order to have a view down the track, and looked both to the right and left for any approaching train, but saw nothing and heard nothing. Mrs. Hinkle testified that her husband put the car into gear and was proceeding across the crossing, being between the rails of the northerly track and the main line track, when she noticed to her right a backing train "looming out of the trees" about twenty or twenty-five feet away from her, that she screamed, "Train!" and the next instant the impact took place. Mr. Hinkle testified that he did not see the train at all and did not know that they had been struck, that he was dazed after the

accident and had only the most confused recollection of what happened after the accident. His first lucid moment came when he found himself in the doctor's office to which he had been taken after the accident. It was Mrs. Hinkle's testimony that after the accident, both she and her husband climbed out of the automobile by themselves and that none of the train crew were present to give them assistance. She testified that the conductor, Rablin, who was not on the backing train but was up by the station helping passengers board the train, and who upon hearing the noise of the collision came down the track, was the first employee to reach them. Respondents denied emphatically that the radio in the car was going at the time of the collision, and Mr. Hinkle categorically denied that on July 31st, the day of the accident, he had anything to drink which contained alcohol. Both the doctor who treated Mr. Hinkle and Mrs. Hinkle after the accident, and a woman friend of the Hinkles who came to the doctor's office at 10:35 P. M. immediately after the accident, testified that there was no odor of liquor upon Mr. Hinkle's breath at that time.

The testimony by members of the train crew was to the effect that the train crew had been instructed by the conductor Rablin, to go to the Moss Hill siding west of the crossing and pick up the two freight cars which were to be made up into the mixed train. The train crew testified on behalf of the railroad company that the usual crossing whistle had been given and the bell was continuously rung; that the headlight was lit and there was a deck light of 300 candle-power in the engine cab and the engineer's reading light, as well as two indicator lights on the engine; that the two brakemen each carrying a white lantern were stationed on the rear of the oil-tank car which was the end nearest the crossing; that the train which had been going at a rate of about ten miles an hour slowed down to four miles as it neared the crossing; that when the end of the oil-tank car was about four or five car lengths from the crossing, Nixon, one of the brakemen, jumped off the oil-tank car and ran ahead of the car at a speed of about eight miles an hour to protect the crossing; that he waved his lantern to warn the respondents, and that he had to jump out of the way to avoid being struck by the automobile of the respondents. There was testimony that the brakeman at the same time he jumped gave the signal for

the emergency stop and that the fireman repeated the signal to the engineer who had already reached for the automatic brake valve to make the stop. When the train came to a stop, it had pushed the automobile parallel to the tracks and the automobile was just off the highway on the east side of the crossing. The two brakemen testified that after the accident the radio in respondents' car was playing jazz music and that they smelled liquor on Mr. Hinkle's breath. Mr. Nixon testified that he assisted both Mr. Hinkle and Mrs. Hinkle from the automobile.

Appellant railroad company in its closing brief states that it has raised but two points on the appeal, that is that the plaintiffs were guilty of contributory negligence as a matter of law for violating the well-established "stop, look and listen" rule, and secondly, that the court erroneously instructed the jury in two particulars.

Appellant insists that the train necessarily must have been seen by respondents if they had looked, and that their evidence to the contrary that they did look but did not see the train is not worthy of credence and will not support the verdict in their favor. Upon this phase of the case it will suffice to say that appellant bases its assumption that the train must necessarily have been seen by the respondents in time for them to have avoided the accident if they had in fact looked, upon the testimony of its train crew, which the jury, as triers of fact, were at liberty to reject, and which they evidently did reject.

In this regard it should be noted that it is quite obvious that the jury did not accept as true the evidence in behalf of the appellant that Nixon, the brakeman, jumping off the rear end of the oil-tank car and running ahead of the car, reached the crossing ahead of the backing train, and gave a warning signal to the respondents with his white lantern in time to enable them to stop their automobile outside of the danger zone. The jury was specifically instructed by the court with reference to the purported giving of the warning signal by the brakeman as follows: "You are instructed that the law of the State of California provides that it shall be unlawful for the driver of a vehicle to traverse a grade crossing when a human flagman gives or continues to give a signal of the approach or passage of a railway train or car, and if you find from the evidence that plaintiff, George

Hinkle, violated this positive rule of law, I instruct you that plaintiff, George Hinkle, was guilty of negligence as a matter of law, and if you find that such negligence, if any, proximately contributed to the injuries complained of, then I instruct you that neither plaintiff can recover.'' It is to be presumed that the jury followed this instruction and if so, the only possible conclusion is that they did not believe that at a time prior to the accident the brakeman did protect the crossing by giving a warning signal. It is highly probable, in our opinion, that the implied finding of the jury exonerating the respondents from contributory negligence was based upon their acceptance of the respondents' testimony that they saw no one at the crossing and the jury's belief that the respondents did not see anyone because in fact there was no one there. ■ Having in mind the fact that the jury was at liberty to reject much of the evidence proffered in behalf of appellant, together with the circumstance that the accident happened on a very dark night at a narrow crossing where large pine trees were growing close to the tracks, and that the train was not approaching head-on with its headlight lighting up the track ahead, but was backing toward the crossing, we cannot say as a matter of law that respondents were negligent in not seeing the backing train in time to avoid it. They were not, therefore, guilty of contributory negligence as a matter of law.

■ The specific instruction complained of by the appellant, the giving of which, it claims, constituted prejudicial error on the part of the trial court, requiring a reversal of the judgment by this court, is as follows: ''You are instructed that although as a matter of law the defendant was not required to equip its employees with a red lantern for the purpose of signaling the approach of a train at a highway grade crossing, and although in this action you cannot find the defendants guilty of negligence because of the absence from the crossing of an automatic signaling device to warn travelers upon the highway of the approach of a train, and also, although the law does not require the defendant to have any light on the forward end of the lead car in any switching movement within the yard limits, and it is not negligence to make such a movement without a light on the forward end of the lead car, nevertheless, if from a consideration of all the facts and circumstances of this case you find from the

evidence that at the time and place referred to in plaintiffs' complaint and in the evidence, an ordinarily prudent person would have maintained a person with a red lantern, would have furnished an automatic signaling device or would have had [a light] on the forward end of the lead car in such switching movement within the yard limits, or would have maintained a flagman, or would have rung a bell, or sounded a whistle, or either one or more thereof, at or near the crossing, to warn travelers of the approach of said train to said crossing, and you further find that the Southern Pacific Company, a corporation, through its agents and servants acting in the discharge of their duties and within the scope of their authority, did not furnish and maintain the same, and that by reason thereof, the plaintiffs were injured, then and in that event I instruct you, the defendant, Southern Pacific Company, was guilty of negligence.''

While it must be conceded that the instruction above quoted is not as precise in its language nor as free from ambiguity as would be desirable, nevertheless, we do not feel it is susceptible to attack upon the grounds advanced by appellant. Appellant's first ground of criticism is that this instruction permitted the jury to find the railroad company guilty of negligence by virtue of its failure to maintain an automatic wigwag signal at the crossing, or a failure on its part to equip its employees with red lanterns rather than white ones, all of which failure to maintain warnings at the crossing was completely outside of the issues of the case by reason of the fact that the only negligence charged in the complaint was the negligent *operation* of the train by the appellant railroad company through its employees. The accident was caused not by the mere failure by the railroad company to provide proper warnings at the crossing, but by the operation of the train across the crossing in the absence of proper warnings, for of course, unless the train was in fact being operated, and there was a movement of the cars, the accident could not possibly have happened. It is true that in the case of *Young* v. *Southern Pacific Co.*, 182 Cal. 369 [190 Pac. 36], it was held that an instruction should not have been given because the complaint had failed to allege as a basis of the claim of negligence the failure to have a flagman at the crossing. But the real basis of the decision reversing the judgment in that case was not the giving of that particular instruction,

but the finding by the appellate court that the deceased was guilty of contributory negligence as a matter of law. Moreover, we are of the opinion that the more recent decision of *Sheets* v. *Southern Pacific Co.*, 1 Cal. (2d) 408 [35 Pac. (2d) 121], is contrary to appellant's contention. In that case the contention was made that inasmuch as the complaint alleged that the defendants "so negligently and carelessly operated said freight car" as to cause the accident, the plaintiff was restricted to proof of the operation of the freight car to sustain his claim of negligence, claiming that the action of a brakeman in guarding the traffic and guarding the crossing was no part of the operation of the train. This claim of the defendant was repudiated by the trial court, and upon appeal, the correctness of its action was affirmed by this court. The facts of the instant case are sufficiently similar to the facts of that case to warrant an application of the same rule.

Moreover, from a reading of the respective instructions proposed to the trial court by the respondents and by the appellant, it appears that respondents made no request whatever for any instructions relative to the maintenance of automatic signaling devices or the furnishing by the railroad company of red lanterns to its employees. It is apparent therefrom that the respondents had no intention of relying for a finding of negligence against the railroad company upon the absence from the crossing of any automatic signaling device, or the fact that the brakemen were using white lights rather than red ones, but principally predicated their claim of negligence by the company upon the absence from the crossing of a brakeman with either a red or white lantern to give a warning signal. However, appellant proposed two separate instructions to be given by the trial court, one of which was to the effect that it "was not required as a matter of law for any of defendant's employees to be equipped with a red lantern for the purpose of signaling the approach of a train at a highway crossing", and the other one to the effect that the jury "could not find the defendant guilty of negligence because of the absence from this crossing of an automatic signaling device to warn travelers upon the highway of the approach of a train". These proposed instructions are in almost the identical words of the first part of the instruction now complained of by appellant. The trial judge was of the opinion that these instructions, standing alone, under the cir-

cumstances of the instant case, by failing to completely state the law, failed to state it correctly, and proposed that such instructions should be added to other instructions referring to other warning signals such as the blowing of the whistle, the ringing of the bell, and maintaining of lights on the forward end of the lead car. Appellant made no objection to this procedure and at no time drew the attention of the court to the fact that the question of the maintenance of automatic signaling devices or the failure to equip its employees with red lanterns was not within the issues raised by the complaint. In view of the fact that the questions of whether the maintenance of automatic signaling devices, or the failure to equip the company's employees with red lanterns constituted negligence on the part of the railroad company were injected into the case by the appellant itself, we do not think it can now fairly be heard to complain that such questions were not in issue in the case.

■ With reference to the contention of appellant that there was no evidence that the crossing was a particularly dangerous crossing and in the absence of such showing there could be no finding of negligence on the part of the railroad company in failing to maintain an automatic signaling device, we are not prepared to say that a specific finding by the jury that the crossing was sufficiently hazardous to require the maintenance of an automatic signaling device would not find support in the evidence. It is true the crossing is not in a populous city, but it is over a public highway where there is much travel to and from a popular summer resort. Moreover, it is apparent from the photographs introduced as exhibits that an unobstructed view of the tracks cannot be had until one is almost upon them. The fact that a crossing is frequently crossed over by travelers is not an indispensable factor to a determination that a crossing is a particularly dangerous one, but the hazardous nature of the crossing may depend upon the physical nature of the crossing itself.

■ When the instruction is read in its entirety, and not in segregated portions thereof, we think it is apparent that it contained a correct exposition of the law. The gist of the instruction was to the effect that although the railroad company was not required by statutory provisions, as a matter of law, to furnish certain warning devices at public crossings, such as red lanterns to its employees, automatic signal-

ing devices, or any light on the forward end of the lead car in any switching movement within the yard limits, nevertheless, the absence of such statutory requirement did not relieve the defendant railroad company of its obligation to exercise reasonable care for the safety of travelers at crossings, and if an ordinarily prudent person would have supplied one or more of these warnings and the injury to respondents was a result of the failure by the railroad company to furnish and maintain one or more of such warnings, then the railroad company was guilty of negligence. This is substantially correct. (*Bush* v. *Southern Pacific Co.*, 106 Cal. App. 101 [289 Pac. 190].)

Finally, it may be said, as before indicated, that we doubt very much that the verdict of the jury was based upon a failure to maintain an automatic signaling device, or to furnish red lanterns to its employees. The fact that the conductor, Rablin, was exonerated by the jury does not conclusively prove that the jury did not find the railroad company guilty of negligence in the operation of the train through its agents, the train crew, and must, therefore, have based the negligence of the company upon the factors for which it alone was solely responsible. The other members of the train crew were named in the complaint as First Doe, Second Doe and Third Doe. As they were not served, a judgment could not be rendered against them. If the brakeman did in fact fail to properly protect the crossing, then the defendant railroad company was guilty of negligence, despite the fact that no verdict could be returned against such negligent brakeman.

In our opinion, no error was committed by the trial court either in failing to find the respondents guilty of contributory negligence as a matter of law, or in instructing the jury.

The judgment is affirmed, and likewise the order denying the motion for judgment notwithstanding the verdicts is affirmed.