[Civ. No. 3119.   Fourth Dist.   Apr. 5, 1944.]

EMANUEL HEINTZ et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Rae B. Carter and John D. Chinello for Appellants.

W. H. Stammer and Galen McKnight for Respondents.

BARNARD, P. J.—This is an action for damages for the death of Robert Heintz who was killed about 3:45 a.m. on November 11, 1941, when an automobile being driven by him collided with a loaded fruit car standing on one of the main streets of Sanger. He was 25 years old, and married. His wife was killed in the same accident and this action was brought by his parents as his sole heirs at law.

The accident happened a short distance south of the intersection of M Street and Eleventh Street, in Sanger. M Street is a continuation of the main highway into the city and runs north and south. It is 59 feet wide from curb to curb north of Eleventh Street and 56 feet wide from curb to curb south of Eleventh Street. It was paved for its entire width, but the pavement of a strip 20 feet wide along the center of the street was of a different color and substance from that on either side of that strip. At the time in question there was no white line down the center of this street. South of Eleventh Street there were some sycamore trees on each side of M Street, the foliage being red or brown or yellow at the time. M Street came to a dead end about a block and a half south of Eleventh Street and at that end there was a large advertising signboard. Eleventh Street was 52 feet wide from curb to curb. Near the center of the intersection of M and Eleventh an arc light of 250 candle power, which was burning at the time, was suspended 25 feet above the pavement. A similar arc light, also burning at the time, was suspended over the intersection of M Street and Twelfth Street, a block to the south of Eleventh Street.

On the east side of M Street and extending down to tne north line of Eleventh Street there was a large fruit packing house. On the west side of M Street and beginning 170 feet north of Eleventh Street there was another building, known as the "Frankenthal" packing house. Between this building and the west curb of M Street were two sets of parallel railroad tracks, the easterly rail being 10 inches from the pavement on M Street. These two tracks were known as the "drill track" and the "house track," the "house track" being the one to the west. These tracks ran parallel to the west side of M Street to a point 96 feet from the north side of Eleventh Street. From that point they curved at a slight angle southeasterly and diagonally across the intersection and passed beyond the east side of M Street, a short distance south of Eleventh Street. There were the usual cross-arm "railroad

crossing'' signs to the south, east and west of this intersection but there was no such sign to the north of the intersection, where the railroad tracks were close to the curb.

On the occasion in question, the defendants were engaged in some switching operations in order to take out a loaded fruit car from in front of the Frankenthal packing house. A switch engine moved that car and some empty cars southerly and across M Street to a switch a short distance east of that street and then pushed the cars back along the house track to a point where it was thought the car in question would clear cars passing along the drill track. The loaded fruit car was then disconnected and left standing on the house track diagonally across the center of M Street, its northwest corner being 20 feet from the west curb line of M Street and its southeast corner being 20 feet west of the east curb line of M Street. In this diagonal position it stood across the 20-foot strip of different colored pavement in the center of the street, leaving about 20 feet of pavement clear on either side. The other cars were then pulled southerly to the switch, the intention being to push these cars along the drill track, easterly from the house track, to put them back at the Frankenthal packing house. Accepting the evidence most favorable to the plaintiffs, no men were left with the loaded fruit car thus standing in the street and no lights or additional warning were provided. This loaded fruit car weighed about 50 tons, was about 42 feet long, about 10 feet wide and about 13½ feet high. Its ends were painted a dull red and its sides a dull yellow.

The loaded fruit car remained in this position some three or four minutes before the accident occurred. There were no eyewitnesses to the accident but it appears beyond question that Robert Heintz was driving south on M Street somewhere near the center of that street and his automobile collided with the loaded fruit car at or near its northwest corner as it stood in the center of the street and on the westerly of these two parallel tracks. His automobile had passed over the drill track and struck the fruit car as it stood on the house track. The front end of the automobile was wedged under the box of the fruit car and against the running gear of that car. The front end of the automobile was badly damaged, there was some damage to the lower front end of the fruit car, and a traffic officer testified that the wheels of

the fruit car at the point where the impact occurred seemed to be "bent back a little bit" and that this automobile was "jammed in there pretty hard."

The point of the impact was about 89½ feet south of a point on the pavement directly under the arc light at the intersection of M and Eleventh Streets. It appears, without conflict, that the night was dark but clear and that there was no fog. The deceased had lived for eight months about one and one-half blocks southerly from this intersection, and he had driven over this railroad crossing many times.

At the conclusion of plaintiffs' case the court granted a motion for a nonsuit made upon the grounds that there was no proof of negligence on the part of the defendants which was a proximate cause of the accident, and that the evidence produced by the plaintiffs disclosed contributory negligence, as a matter of law, on the part of Robert Heintz. The plaintiffs have appealed from the judgment which followed. It is their contention that there was sufficient evidence to go to the jury both on the question of the defendants' negligence and on the issue of contributory negligence. While that matter is not entirely free from doubt we will assume, for the purposes of this opinion, that the question of whether the respondents were negligent in not taking further precautions to warn approaching motorists of the presence of this fruit car on this street was one of fact for the jury.

On the question of contributory negligence, in addition to the situation indicated by the facts above stated, certain witnesses, all called by the appellants, gave testimony which is material. Mr. Goodwin passed this loaded fruit car shortly before the accident, while he was driving an automobile north on M Street in a direction opposite to that in which the deceased had traveled. He testified that he entered M Street about half a block south of Twelfth Street and proceeded north; that as he approached Eleventh Street he saw the fruit car; that he was within six or eight feet of it before he saw it; that he had headlights and fog lights; and that when he saw the fruit car six or eight feet away he swerved to his right and went around it. He further testified that after he entered M Street and "got straight on the street" he took out a cigarette and lit a match, that there was a flare in putting the match to the cigarette and for a short time he could not see too clearly, and that when he threw the match out "I looked and I was facing a box car." He also testified

that he had told a representative of the railroad company "maybe the reason I didn't see the box car as soon is that I just lit a cigarette and the flare from the match upon the wind shield made considerable glare" and that this may have been the reason "why I didn't see the box car until I was within six or eight feet of it."

Mr. Ward testified that on this morning he was coming into Sanger in an automobile and driving south on M Street; that he was driving about 30 or 35 miles an hour up to the time he started to stop; that when he was about eight blocks north of the point of impact he heard a bump or crash which came from the railroad tracks to the south of him; that the first thing he noticed was an automobile coming toward him; that this automobile did not pass him but turned off to his right; that he saw no other moving automobile; that he drove to the scene of the wreck and stopped; that he stopped because of "curiosity"; that when he was 2 or 2½ blocks north of the wreck he saw a light coming along the side of the fruit car, moving from the southeast to the northwest; that this was the only light he saw until he parked; that this light seemed to be carried by an individual; that after he parked he saw a second man with a light around the fruit car although he did not know where he came from; that when he was back two or three or more blocks he could see the arc light over the intersection of M Street and Eleventh Street; that he saw the wreck and stopped; that he saw the automobile jammed underneath the fruit car; that he came to a normal stop; that he could see that there was a wreck or something there when he was 300 feet north of it; that at that point he was able to see the fruit car and the automobile jammed underneath it; that having at that point seen the fruit car and the automobile he came slowly to a halt and stopped at a point which is about six feet north of the north curb line of Eleventh Street. He was then asked "And during all of this time you only saw this one lantern, is that right?" He answered: "That is all I saw up to the time I stopped." That until he stopped there were no flares and no lighting of any kind except the one lantern and the street light above Eleventh Street; that there were two men at the scene of the wreck when he got there; that he did not know where the other one came from; that when he stopped his car he saw one man with a light but did not see the other;

that he was about 2½ blocks north when he first saw the moving lantern; and that he was then traveling about 30 miles an hour. The final question asked of this witness was "Had you seen any portion of the automobile which was in contact with the fruit car before you parked your automobile?" His answer was: "Yes." The place he parked was 121 feet north of the point of impact.

A traffic officer testified that he investigated this accident in response to a radio call, that he traveled about 60 miles an hour where possible, that it was a dark clear night, that he drove south on M Street, and that when he reached a point a little north of Eleventh Street he could see the fruit car, could see the automobile jammed under it, and could see people walking around. He testified as to the manner in which the automobile was wedged into the fruit car and that he found no visible skid marks behind that automobile. He further testified "We could see the cars because we had lights on. We could naturally see it, and we pulled off and parked on the east side of the road, and the difference on seeing the car and putting on our brakes and stopping the car, we had to see it someplace north of Eleventh Street."

The appellants introduced in evidence four flashlight photographs taken by a deputy sheriff at about 5:15 a.m. on this morning, before the fruit car and automobile had been removed. Two of them show the demolished condition of the front end of this automobile and the manner in which it was wedged under the corner of the fruit car, and some of the bent ironwork on the fruit car. One of them, taken from a point to the north of the fruit car and looking south along the center of M Street, clearly shows that the fruit car would be plainly visible to anyone driving south on this street, and that the trees to the south of the fruit car would not interfere with that view. There is also testimony that the car driven by the deceased had good brakes and good lights.

■ A duty rested upon the deceased to use ordinary care to look and to avoid colliding with visible objects in front of him, and a special duty of care rested upon him in approaching and crossing these railroad tracks, which were in themselves a warning of danger, and with the presence and location of which he was thoroughly familiar. (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788].) ■ It appears from the evidence introduced by the appellants that this accident occurred near a well-lighted intersection on a main

street. It was also a blind intersection to a person driving south, as was the deceased. The railroad tracks crossed Eleventh Street partially within the intersection and almost under the arc light. The fruit car stood some 60 feet south of the intersection where it must have been lighted up to some extent by the arc light. There was a similar arc light less than a block to the south of it. Not only do the surrounding circumstances indicate that this fruit car must have been visible to anyone traveling south on M Street, but the testimony of two of appellants' witnesses demonstrates that this was true. One of them came south on M Street only a matter of seconds after the deceased did so and he was able to see the entire situation at least 300 feet away. The traffic officer did the same thing a short time later and his testimony indicates that the objects were rather clearly visible at what would be a safe distance. The only possible inference from appellants' own evidence is that the deceased drove along the center of this street at a very considerable speed. The manner in which he struck the fruit car, the fact that he did not swerve to the right or to the left, and the fact that he left no brake marks on the pavement indicate either that he did not see the car at all or that he did not see it until he was right upon it. The appellants argue that it might be inferred that the fruit car, painted a dull red and dull yellow, so blended with the trees behind it that it could not be seen; that the lights of the deceased's automobile may have shown under the center of the side of the car, illuminating the pavement beyond but not showing the presence of the car; and that the deceased may have seen the fruit car and thought it was the advertising signboard a block and a half farther south. No such inferences are reasonably possible in view of the evidence and the rather complete demonstration that the fruit car was visible. The fruit car was diagonally across the center of the street, there was no rise in the ground, and as the deceased approached from the north his lights, even if they were depressed, could not have gone under the center of the side of the fruit car but would have shown the running gear of the fruit car even if they had not been high enough to show the superstructure. The deceased, being familiar with the location, could hardly have mistaken the car for the signboard down near his home for if he had done so he would not have crashed into it, knowing that it was at

the end of the street. Insofar as the evidence which was introduced is concerned we think it leads to but one conclusion, and one about which reasonable minds could not differ. It is not sufficient to justify an inference that the deceased used a reasonable degree of care under the existing circumstances.

The appellants, however, rely on the presumption that the deceased exercised due care for his own safety and argue that this presumption is sufficient to raise a question of fact for the jury. They go so far as to argue that this presumption "declares that whatever the decedent may or may not have done he was not negligent." This argument overlooks the well established rule that this presumption of due care is dispelled and disappears from the case when a fact which is wholly irreconcilable with it is proved by the uncontradicted testimony produced by the party relying on the presumption. In *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590], the court said:

"In the case of *Mar Shee* v. *Maryland Assur. Corp., supra,* [190 Cal. 1 (210 P. 269)], this court had before it the question as to whether the presumption in favor of one of the parties to said action has been 'overcome by satisfactory evidence.' In that case the rule was announced that 'a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.' "

This rule was applied in *Friddle* v. *Southern Pac. Co.,* 126 Cal.App. 388 [14 P.2d 568] and in *Martz* v. *Pacific Electric Ry. Co.,* 31 Cal.App. 592 [161 P. 16], and was recognized in *Brewer* v. *Southern Pac. Co.,* 29 Cal.App.2d 251 [84 P.2d 230], although the facts in that particular case were such as to distinguish it from railroad crossing cases, as pointed out by the court. We find nothing in *Peri* v. *Los Angeles Junction Ry.,* 22 Cal.2d 111 [137 P.2d 441], *Harper* v. *Northwestern Pac. R. Co.,* 34 Cal.App.2d 451 [93 P.2d 821], and *Nichols* v. *Southern Pac. Co.,* 58 Cal.App.2d 91 [136 P.2d 332], relied upon by the appellants, which in any way changes the long established rule that any presumption of due care is dispelled by facts which are inconsistent with such due care

and which are proved by the party relying on the presumption. The facts of those cases are clearly distinguishable from those of the case now before us, where the appellants' own evidence clearly establishes that the deceased was familiar with this crossing, that the fruit car was visible and should have been seen by any driver who was exercising any care at all, and where there was ample room to pass on either side of the fruit car, even if reasonable care was belatedly used. Under the circumstances here appearing, we think any presumption of due care was dispelled by the facts clearly proved by the appellants, that under those facts the deceased was guilty of contributory negligence as a matter of law, and that the trial court correctly so held.

The judgment is affirmed.

Marks, J., concurred.

GRIFFIN, J.—I dissent. I agree with the majority opinion, if we accept the testimony of plaintiffs in its most favorable light, that there is sufficient evidence shown to establish negligence on the part of defendants in leaving, unattended and unlighted, a box car without warnings parked diagonally across and in the middle of a paved and fairly well traveled street in the nighttime under the circumstances described. The conclusion that defendants were negligent is supported by the decision in the case of *Peri* v. *Los Angeles Junction Ry. Co.*, 22 Cal.2d 111 [137 P.2d 441]. The question of defendants' negligence, under the evidence here presented, however, is one of fact to be determined by the jury, and not one of law.

I also agree with the main opinion that there is substantial evidence to indicate that the deceased driver was guilty of negligence in many respects, and if the jury determined that such negligence was a proximate cause of his death, plaintiffs would be barred from a recovery. This, however, is not the question here presented. The question is whether the evidence conclusively shows that the driver was guilty of contributory negligence as a matter of law, which negligence contributed proximately to his death. I will concede that the question is a close one. On a motion for nonsuit this court is bound to assume that all evidence received in favor of the plaintiff, relevant to the issues, is true. All presumptions,

inferences and doubtful questions must be construed most favorably to the plaintiff. (*Hinds* v. *Wheadon*, 19 Cal.2d 458, 460 [121 P.2d 724].) In *Gray* v. *Southern Pacific Co.,* 23 Cal.2d 632, 640, 641 [145 P.2d 561], it was stated:

"In determining the disputed questions of fact presented at the trial of the case it was the province of the jury to disbelieve any testimony which appeared to them to lack verity. They were the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. They could reject positive testimony and accept circumstantial evidence as proof of the facts, as it is elementary that direct evidence may be disbelieved and contrary circumstantial evidence relied upon to support a verdict or finding." (Citing cases.) (See, also, *Whitechat* v. *Guyette,* 19 Cal.2d 428, 434 [122 P.2d 47].)

There can be no question but that plaintiffs were, at the outset, entitled to the benefit of the presumption "that a person takes ordinary care of his own concerns" and "that the law has been obeyed." Such presumptions are evidence until rebutted. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529].) As long as this presumption remained in the case a nonsuit should not have been granted. (*Smellie* v. *Southern Pacific Co., supra.*) The question is, then, can it be fairly said in this case that the presumption "faded out," "disappeared and vanished from the case" as a matter of law because of evidence adduced by plaintiff which, it is claimed, contradicted or controverted such presumption. There were no eyewitnesses to the accident. There was no testimony respecting the acts and conduct of the decedent leading up to the collision. The cases cited plainly declare that under such circumstances a presumption existed that the decedent was not guilty of contributory negligence. Although it might be inferred, from plaintiffs' evidence, that other motorists, under varying conditions, saw the parked refrigerator car in time to avoid it, this court cannot declare as a matter of law, in the absence of evidence as to what the decedent saw or did, that the decedent should have seen the parked refrigerator car in time to have avoided it. Respondents lay considerable stress upon the fact that a strong light (250 candlepower arc light) was suspended over the street 89½ feet north of the refrigerator car, and that visibility "was such that the refrigerator car could be seen by persons driving south on M Street for a distance of 491 feet." It

may be well reasoned that the glare from such a strong light as contended by respondent, may have blinded the deceased to the extent that he was unable to see the refrigerator car until it was too late to avoid striking it. Such an inference would not be unreasonable. (*Nichols* v. *Southern Pacific Co.,* 58 Cal.App.2d 91 [136 P.2d 332] ; *Scoville* v. *Keglor,* 27 Cal. App.2d 17, 33 [80 P.2d 162].)

One witness (Goodwin), who was driving north on M Street, testified that before he got to Eleventh Street he saw a freight car on the railroad track; that he ''was within six or eight feet of it before he saw it'' (which was approximately under the same lighting conditions) ; that he swerved his car to the right and went around it; that he saw no lights of any kind on the roadway or any individual holding or signaling any light; that he had his lights burning on his car ; that he was traveling about 20 miles per hour. On cross-examination he testified that somewhere in the last block approaching the refrigerator car he took out a cigarette and lit a match. He was then asked the following questions and gave the following answers: ''Q. And the flare of that match in your car and against your windshield blinded you for a while? A. It didn't blind. There is a flare after you strike a match to the cigarette. Q. And for a short time after you can't see out very clearly? A. Not too clearly. Q. And when that flare went out you saw that freight car ahead of you? A. Yes. Q. And you were about 40 feet away from it? A. I was about 6 or 8 feet away.''

It is true that other witnesses gave testimony which indicated that they could see the parked refrigerator car from a greater distance as outlined in the main opinion. It would have been competent for a jury to decide the issue of visibility on circumstantial evidence and determine from the testimony and circumstances of the case within what distance the dark refrigerator car, blended with its dark surroundings, should have been visible to the decedent as he approached it. On the motion for nonsuit appellants were entitled to the full weight and benefit of Goodwin's testimony and to have such other testimony as might be opposed to it disregarded.

The results of the impact did indicate that the deceased driver was traveling at an excessive speed. In *Peri* v. *Los Angeles Junction Ry. Co., supra,* at page 127, it was said:

''Ordinarily it is not negligence as a matter of law for a

motorist to drive at such a speed that he cannot stop within the range of his vision; it is a factual question." (Citing cases.)

In this case I am not particularly impressed from the evidence before us, that plaintiff should ultimately recover a judgment. In case of such a recovery the trial court, on a motion for new trial based on the ground of insufficiency of the evidence, may weigh and consider the evidence adduced under different rules from those applicable to a motion for nonsuit. (*Frost* v. *Los Angeles Railway Co.*, 165 Cal. 365 [132 P. 442]; 20 Cal.Jur. 117, § 75.)

In view of the cases above mentioned, keeping in mind that the testimony of witnesses called under section 2055 of the Code of Civil Procedure is not, when weighing it against a presumption, to be considered (the main opinion rightfully omits from consideration such testimony); that the jury has a right to reject positive testimony and accept circumstantial evidence as proof of the facts; and assuming that all evidence received in favor of the plaintiffs and relevant to the issues is true, I am inclined to believe that it cannot be said here, as a matter of law, that the presumption of due care vanished and disappeared from the case. I am convinced that a question of fact arose for the determination of the jury as to whether the driver was guilty of contributory negligence and that the question was not one of law. (*Peri* v. *Los Angeles Junction Ry. Co.*, *supra*; *Nichols* v. *Southern Pacific Co.*, *supra*; *Hinkle* v. *Southern Pacific Co.*, 12 Cal.2d 691 [87 P.2d 349]; *Harper* v. *North Western Pac. R. Co.*, 34 Cal.App. 2d 451 [93 P.2d 821]; *Brewer* v. *Southern Pacific Co.*, 29 Cal. App.2d 251 [84 P.2d 230].)

A petition for a rehearing was denied May 3, 1944. Griffin, J., voted for a hearing. Appellants' petition for a hearing by the Supreme Court was denied June 1, 1944. Curtis, J., and Carter, J., voted for a hearing.