[Civ. No. 17359. First Dist., Div. One. Jan. 28, 1958.]

Estate of WILLIAM A. JACKSON, Deceased. ALICE C. JACKSON, Respondent, v. THE JACKSON HOSPITALS, INC. (a Corporation) et al., Appellants.

*Assigned by Chairman of Judicial Council.

Francis T. Cornish, Thomas J. Cunningham and John P. Sparrow for Appellants.

Donohue, Richards & Gallagher and George Olshausen for Respondent.

WOOD (Fred B.), J.—In this contest of the probate of the purported will of William A. Jackson, a major question is whether the evidence supports a special verdict that Jackson did not either by words or conduct declare to the attesting witnesses, both being present at the same time, that the instrument which they signed was his will.*

According to the testimony of one of the witnesses, every requirement for the execution of a written will not entirely in the handwriting of the testator was complied with. According to the other witness, Clement Ford, there was a failure of the testator to declare to the witnesses that the instrument signed by them was his will.

Appellants, proponents of the will, claim that Ford's testimony was too insubstantial in character to support the special verdict on that subject. We do not so view it. A brief summary of Ford's testimony will demonstrate its substantial character.

Mr. Ford testified that he was at Mr. Jackson's residence and Mr. Jackson asked him to sign a document. He said, "Clem, come over and witness my signature." Jackson had already signed. Ford was not present when Jackson signed but recognized the signature as Jackson's. Nobody told Ford the document he signed was a will. He knew it was a legal document. That was all he knew. He had in mind it was probably what he called a trust agreement which Mr. Jackson had said he was going to set up to operate the Jackson Hospitals. His understanding of this document was that it would be put into effect almost immediately, a living trust. He couldn't be sure what it was. He asked if he should read the document and was told "No." He just witnessed Jackson's signature. He signed and left the room. The first he learned he had signed a will as a witness was several months later, after Mr. Jackson died.

Appellants question the sufficiency of Ford's testi-

---

*One of the prerequisites of a written will, other than holographic, is that "[t]he testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will." (Prob. Code, § 50, subd. 3.)

mony upon grounds which really go to its weight, factors appropriate for consideration by the triers of the facts, not by a reviewing court.

For example, they say that greater credence should be given the testimony of the other witness, an attorney, than to the testimony of Ford, a layman. It is for the jury to weigh the two. (*Estate of Hansen,* 38 Cal.App.2d 99, 115, 116 [100 P.2d 776].)

Appellants invoke the presumption which is accorded the attestation clause. In this case that clause says that Jackson when subscribing the instrument declared it was his will. But this presumption is merely of evidentiary value, to be considered and weighed with other evidence, including the testimonial evidence.

They also say that Ford's testimony is "negative," not really inconsistent with the testimony of the other attesting witness; i. e., what Ford did not hear (a declaration by Jackson that the instrument was his will) is supplied by the other attesting witness. The jury might, perhaps, have so inferred but did not. Mr. Jackson and the two witnesses were in close proximity to each other and there is no indication that Ford was hard of hearing. It is a reasonable inference that what Ford did not hear on this subject was not said. That, we think, is the implied finding of the jury. It has frequently been held that a witness' failure to hear a warning signal may support a finding that no warning was given, even though there be affirmative testimony that it was given. (*Washington* v. *City & County of San Francisco,* 123 Cal.App.2d 235, 242 [266 P.2d 828], and authorities there cited.) *Friddle* v. *Southern Pac. Co.,* 126 Cal.App. 388 [14 P.2d 568], recognized this principle but the facts of that case did not warrant its application. One witness who was some 400 yards from the scene of a collision did not hear a warning signal which the train crew and residents in the vicinity did hear; nor did he hear the noise of the collision which others heard over a distance of several blocks. The reviewing court deemed his testimony "so nebulous and evanescent as to render it nothing more than a mere pretense of evidence." (P. 392.) That bears no real likeness to the testimony under discussion in this case.

Appellants further claim that Ford was biased. There is evidence tending to show that, some time after the signing, differences developed between him and Jackson concerning the terms of his employment by Jackson. They also assert

that his testimony contained some contradictions. Those were factors appropriate for consideration and appraisal by the jury. The record concerning them is not such as would require or permit a reviewing court to hold that Ford's testimony is too insubstantial to support the jury's special verdict.

■ Further, in relation to Ford's testimony, appellants claim it was prejudicial error for the trial court to reject the following instruction requested by them: "It is the duty of the subscribing witnesses to any will or codicil to be satisfied of the testator's sanity before they subscribe the instrument. A duty attaches to the witness to satisfy himself of the competency of the party before he lends his name to attest the act. When a witness, who has solemnly subscribed his name to a will or codicil as an attesting witness, knowing the nature of his act, and that the deceased would rely upon his name as a part of the execution of the will, undertakes by his evidence to overthrow or cast suspicion about it, his evidence should be closely scrutinized and viewed with suspicion." We find no error in the rejection of this instruction.

The first two sentences of this instruction give it an emphasis and cause it to pivot upon a subject ("sanity" and "competency" of the testator) that has no bearing upon the subject under discussion, nor upon the testimony of this witness. Ford did not cast any doubt upon Jackson's competency. To the contrary, he said Jackson was of sound mind at the time he (Ford) signed as a witness, and the jury by special verdict found that Jackson "was of sound mind at the time he signed and executed the instrument."

Moreover, the requested instruction had reference to an attesting witness "who has . . . subscribed his name to a will . . . knowing the nature of his act . . ." This witness testified he did not know and was not told it was a will. If the jury believed him, the instruction would not come into play. If the jury disbelieved him the disputed fact would be established and the instruction need not be applied.

Accordingly, we find no error, certainly no prejudicial error, in the refusal of this instruction.

■ Appellants claim it was error to instruct the jury on those requirements of due execution of a will (Prob. Code, § 50) concerning which the evidence, without conflict, showed compliance.

It is not entirely clear what they refer to. The court read to the jury the first three subdivisions of section 50 of the Probate Code and then told them (1) it is an established fact

that the instrument was signed by Jackson at the end thereof; (2) the jury must determine from the evidence whether Jackson did or did not sign or did or did not acknowledge his signature, in the presence of both witnesses; and (3) the jury must determine whether Jackson, at the time of signing or of acknowledging his signature, declared by words or conduct to the two witnesses, both being present, that it was his will.

It was certainly proper to inform the jury that the fact of subscription by Jackson was established. It was likewise proper, in view of the conflict in the testimony, to give the jury the question whether or not Jackson declared this to be his will.

So, also, was it proper to give them the question whether or not he signed or whether or not he acknowledged his signature in the presence of the witnesses. The attestation clause declared that he "signed" in their presence. There was testimony that he had already signed but that he, in effect, "acknowledged" his signature in their presence. Moreover, the jury by special verdict found that Jackson, though he did not "sign," did "acknowledge . . . that he . . . had signed the instrument." Even if there had been error, which we do not find, there could have been no prejudice.

We conclude that the special verdict that Jackson did not declare to the witnesses that the instrument they signed was his will, supports the judgment that this instrument "was not duly executed in accordance with the law" and is "invalid," requiring a denial of probate.

In view of this conclusion we need not consider other points of error asserted by the appellants except those which relate to the denial of their motions for new trial.

■ Upon the return of the verdicts and prior to judgment two of the appellants made and the court denied motions for judgment notwithstanding the verdict. Neither party moved "in the alternative" by asking and reserving the right to apply for a new trial.

Later, these two filed written notices of motion for judgment notwithstanding the verdict. One was in the alternative, the other not. The latter was accompanied, in a separate document, by a notice of motion for new trial. The court refused to hear these motions for new trial upon the ground of waiver evinced by failure to make the original, the oral, motions in the alternative.

We find no error in that ruling. Section 629 of the Code of Civil Procedure as amended in 1951 seems quite clearly to require a party, when moving for judgment notwithstanding the verdict, to couch it in the alternative form if he wishes to preserve his right to a new trial. It says that "[if] such reservation is not made contemporaneously with the motion for judgment notwithstanding the verdict, the right to apply for a new trial shall be waived." That, it would seem, is too clear to require interpretation. It is aided by other features of the 1951 amendment which indicate an intended interrelation between these two types of motion. Moreover, section 659 was amended at the same time as section 629, by the very same legislative measure (Stats. 1951, ch. 801), to reflect such interrelationship by indicating the time within which a notice of intention to move for a new trial may be made "where [before entry of judgment] a motion for judgment notwithstanding the verdict is pending." The conclusion is irresistible that there has here been a waiver.*

Appellants argue that because the text of the first sentence of section 629 was not changed in 1951 and because that sentence speaks of "judgment . . . notwithstanding the verdict" before entry of judgment, we have two kinds of motions therefor. We are not persuaded. The first sentence speaks only of what happens when a judgment notwithstanding the verdict is in order; i. e., when a motion for directed verdict has been improperly denied. It speaks also of the court's own motion as well as that of the aggrieved party. It has no necessary connection with what happens to a party's intention to move for new trial if not mentioned and reserved when making his motion for judgment notwithstanding the verdict.

The other appellants, four in number, filed motions for judgment notwithstanding the verdict and did so in the alternative. Their motions for new trial were heard upon the merits and denied. At that hearing they focused attention upon Mr. Ford's testimony and urged its rejection upon essentially the same grounds as upon this appeal. Our analysis of that testimony furnishes no basis for reversing the orders denying a new trial.

The judgment and the orders denying motions for judg-

*This view of the statute comports, also, we believe, with the declared intent of the proponents of the 1951 amendment as expressed by them both before and after its enactment. (See 25 State Bar Journal 304-307, July-August, 1950; and 26 State Bar Journal 229-306, July-August, 1951.)

ment notwithstanding the verdict are affirmed. The other appeals, having been taken from nonappealable orders, are dismissed.

Peters, P. J., and Bray, J., concurred.

The petition of appellants Florence T. Seagrave and the Regents of the University of California for a hearing by the Supreme Court was denied March 26, 1958. Schauer, J., was of the opinion that the petition should be granted.